OPINION OF THE COURT
Martin B. Stecher, J.
Each of the parties sues the other for divorce. On motion made prior to trial, consolidation was directed but no order was ever submitted. At the trial, I directed that the husband be deemed the plaintiff and the wife, the defendant, and that her complaint be deemed her counterclaim.
-The plaintiff has been married five times, twice each to two women; the defendant has been married three times. Their most recent marriage, to each other, occurred on December 28, 1976. They separated on June 17, 1979. No issue was born of this marriage. Each has two children by prior marriages.
I do not find the plaintiff to have been a credible witness, nor to have offered sufficient proof warranting affirmative relief from the court. Accordingly, his action for divorce is dismissed.
Mrs. Brettschneider, who, following the commencement of her husband’s action for divorce, began one of her own, is *862 deemed in this action to be the defendant and her complaint, a counterclaim. Her first counterclaim is for divorce based on cruelty. Most of her allegations, even if true, do not rise to the level of cruelty, within the meaning of subdivision (1) of section 170 of the Domestic Relations Law warranting a divorce. There is no proof that these acts endangered Mrs. Brettschneider’s physical or mental well-being so as to render it unsafe or improper for her to cohabit with her husband.
Among other acts of cruelty alleged, Mrs. Brettschneider also asserted that her husband was constantly seeking to have her engage in sexual relationships with strange men under circumstances where he could observe her and thereby, presumably, obtain vicarious gratification. Naturally, Mr. Brettschneider denied these allegations.
The alleged insistence by the plaintiff that his wife engage, for the husband’s entertainment, in sexual relationships with other men is conduct which might render it “improper” for the defendant to continue to reside with the plaintiff. The difficulty however is that according to defendant’s own testimony this “fantasy” request was not repeated after their return from Santo Domingo, for the plaintiff promised he would stop and according to the defendant he kept his promise. While I do not believe that her continued residence with her husband constituted, necessarily, a condonation of such acts, the fact is that his purported cessation at her request no longer makes it improper for her to reside with him and, accordingly, her divorce on the grounds of cruelty must be denied.
At the trial, a motion was made and granted, without opposition, to amend the counterclaim permitting Mrs. Brettschneider to seek a divorce based on abandonment. There is no question that on or about June 19, 1979, the plaintiff left the marital home intending not to return and, in fact, never did return. He cut his wife off without any support whatever. The plaintiff had no reasonable basis to abandon the defendant in this fashion; his abandonment of her has lasted for a period of more than one year (Domestic Relations Law, § 170, subd [2]) and, accordingly, I find that the defendant, Olivia Brettschneider, is entitled to a judg *863 ment of divorce against the plaintiff, Stanley Brettschneider.
We turn to the economic claims of the parties. Olivia Brettschneider is 39 years old and has two children, a daughter of 16 now residing with the child’s father and a son of 20 now residing with the defendant. From the age of 19 Mrs. Brettschneider worked continuously at the National Bank of North America until sometime after her marriage to the plaintiff on December 28, 1976. Mrs. Brettschneider was the bank’s operations officer at the time the parties met and held that position until she resigned. At the time of their marriage she was earning about $13,500 per annum. With her husband’s encouragement she resigned her position about six months after the parties married.
Following the desertion of her husband, she remained unemployed for a period of about four months. In October of 1979 she was employed as a clerk at Union Federal Savings and Loan Association at a gross weekly salary of $200. On or about April 1, 1980 she obtained employment at the Republic National Bank as an assistant manager earning $16,000 a year. According to her testimony, and I find no reason to doubt it, had she remained in the employment she had at the time of her marriage she would have earned between $20,000 and $23,000 a year by now.
I find that Mrs. Brettschneider’s assets, except for jointly owned real estate hereafter referred to, do not exceed about $10,000.
Stanley Brettschneider at all relevant times was and is the holder of 80% of the shares of Brettschneider Funeral Home. (The only other stockholders are his two infant children for whose benefit he holds the stock as trustee.) Mr. Brettschneider has a unique way of dealing with his personal expenses. He has no checking account. All of his bills are paid by corporate check and he informs his bookkeeper or his accountant’s employee quite arbitrarily which expenses are to be charged to him personally and which expenses are to be charged to the corporation.
What his annual taxable income was appears to have been very much under the control of Mr. Brettschneider himself. Whether or not Mrs. Brettschneider was em *864 ployed, whether or not his interest income rose or fell for the four years concerning which the returns were produced, it is clear that Mr. Brettschneider arranged for his taxable annual income to be approximately $80,000. He has other corporate benefits as well.
During the parties’ brief marriage, plaintiff was quite generous. He purchased at least two fur coats for his wife, jewelry and offered her a $12,000 Fisher coat which, at the defendant’s insistence, was returned to Bergdorf-Goodman. In 1978, the plaintiff bought a home in Puerto Rico which cost about $75,000. The bulk of this payment came from the liquidation of one third of plaintiff’s personal investment (as distinguished from the corporate investment) in Data Factors. The parties vacationed frequently during the first year of their marriage, visiting Puerto Rico about twice a month. They had dinner out as many as five or six times a week. They attended the racetrack once or twice each week.
The plaintiff has been a substantial securities trader although, from the evidence, without much success, having sustained substantial losses. He is obligated to pay alimony and child support to his former wife which was reduced by the court from $450 to $375 per week. He also is currently in arrears of alimony to the extent of about $5,000.
An examination of the financial statement filed in this court by the plaintiff and the papers he submitted in opposition to the motion for temporary alimony and counsel fees indicate that the plaintiff is less than trustworthy and his testimony less than credible. While his assets and earnings are not unlimited, it does appear that by manipulation of corporate income and corporate “expense” he is able to gratify most of his economic wants. His style of living could not be supported on an income of less than $150,000 a year.
Given the relatively brief period of the parties’ marriage, Mrs. Brettschneider’s age and her earning ability (see Kover v Kover, 29 NY2d 408), there is no reason to require the plaintiff to be the defendant’s sole support for the rest of her life. On the other hand, he not only accustomed her *865 to a relatively expensive way of life, but by his interference with her career, has impeded her advancement and in some measure reduced Mrs. Brettschneider’s earning ability. I find the defendant reasonably requires income of $21,000 per annum and that her ability to earn her own way is limited to $16,000 per annum. Justice requires that the plaintiff contribute to the defendant’s support to the extent of $5,000 per annum (see Morgan v Morgan, 52 AD2d 804, and cases cited therein).
The issue is raised as to the effective date of the award of alimony. Ordinarily, the award of alimony dates to the trial (see Metz v Metz, 40 AD2d 680; Golden v Golden, 37 AD2d 578).
Where, however, the circumstances are appropriate, the court has the power to award alimony retroactively (Kalimian v Kalimian, 58 AD2d 884; Bottner v Bottner, 39 AD2d 680), even to the date of the commencement of the action (McCarthy v McCarthy, 143 NY 235). In this case, it should date from the return date contained in the notice of motion for temporary alimony. As indicated previously, that motion was denied in Special Term; but it is clear from the opinion of Mr. Justice Blyn that he was misled by the false financial statement and willfully misleading affidavit of the plaintiff.
Does this constitute a “reversal” of the Special Term order? I think not. An order made pendente lite is not a species of res judicata or law of the case, at least to the extent of binding the trial court. Thus, the reasons for denial of summary judgment in no way bind the trier of fact (see Zook v Hartford Acc. & Ind. Co., 64 AD2d 701). The grant or denial of a motion for preliminary injunction does not mandate the same relief after trial (Walker Mem. Baptist Church v Saunders, 285 NY 462). The reason is readily apparent. Such motions are made on papers. The allegations are not subjected to cross-examination or the other tests of truth available at the trial. The determination is preliminary only based on the information or misinformation contained in the papers submitted. Where the trier of fact finds the truth to be other than as represented in the papers, there is no reason for. the trial court to be rendered helpless by what may have been peijury.
*866 Special Term denied defendant’s motion for counsel fees with leave to apply to the trial court. In my judgment the defendant is entitled to a counsel fee. As indicated above, her total assets did not exceed $10,000, and are probably less now. Her earnings are limited. The law does not require that she bankrupt herself in order to defend the action brought against her by her husband or to prosecute her own causes of action (see Lubin v Lubin, 66 AD2d 677).
I find that a reasonable counsel fee, under all of the circumstances to be $5,000 together with disbursements of $922.80 making in all $5,922.80; and defendant is entitled to receive that sum less the sum of $1,950 already paid by her to her attorney.
[Portions of opinion omitted for purposes of publication.]