John T. KRUSE, Respondent-Appellant,

v.

Mary KRUSE, Petitioner-Appellee.

No. 3–683A184.

Court of Appeals of Indiana,
Third District.

June 19, 1984.

---

Thomas S. Botkin, Thomas F. Grabb, Hahn, Knepp, Botkin, Roberts & Dvorak, South Bend, for respondent-appellant.

Timothy P. McLaughlin, Smith & McLaughlin, South Bend, for petitioner-appellee.

GARRARD, Judge.

On May 14, 1982 the St. Joseph Circuit Court granted a dissolution of marriage to John and Mary Kruse. Mary received custody of their two children and possession of the house and a van. The court ordered John to pay a second mortgage on the family dwelling to C.I.T. Financial Services and the balance of a lien on the van to AAA Credit Union. In addition, John was ordered to pay child support of $124 per week.

On September 10, 1982, John filed a voluntary petition for bankruptcy naming as creditors Mary, C.I.T. Financial Services and the AAA Credit Union. Mary filed a complaint with the bankruptcy court on September 28, 1982 to declare the second mortgage non-dischargeable. On October 12, 1982 Mary filed a petition in the St. Joseph Circuit Court to modify child support.

John objected to the state court proceeding due to the automatic stay issued by the bankruptcy court. John's objection was denied and a hearing was held by Dempsey Cox, Master Commissioner of the St. Joseph Circuit Court. The court approved the master commissioner's findings and report. On February 21, 1983 the court entered an order increasing child support from $124 per week to $168 per week effective October 22, 1982. Upon denial of John's motion to correct errors, this appeal follows.

*Issues:*

The issues [1] on appeal are:

1) Was the assignment of this case to a master commissioner a violation of Indiana Rules of Procedure, Trial Rule 53?

2) Was the trial court's finding of a substantial and continuing change of circumstances an error as a matter of law in that it converted a property

---

**1.** John asserts that the Master Commissioner of the St. Joseph Circuit Court, Dempsey Cox, was permanently appointed Judge Pro Tem and objects to Cox's hearing various proceedings in this status as a violation of the holding in *State* *ex rel. Smith v. Starke Circuit Court* (1981), Ind., 417 N.E.2d 1115. The record before us is devoid of evidence that Cox was appointed permanent Judge Pro Tem and therefore this argument is without merit.

settlement into alimony, which is forbidden by Indiana law?

3) Did the trial court infringe upon the jurisdiction of the United States Bankruptcy Court by deciding an issue relating to the dischargeability of a debt in bankruptcy?

4) Was the trial court's order modifying support an abuse of discretion in that it made the order effective ten days after the petition to modify support was filed?

*Issue 1*

■ John asserts that the Judge of the St. Joseph Circuit Court routinely assigns all domestic relations cases to a master commissioner. He maintains that the appointment of a master commissioner is governed by both IC 33-4-1-75.1 and TR 53. Because reference to a master commissioner should be the exception and not the rule under TR 53(B) [2] John claims the court has violated the rule continually and the denial of his objection to proceedings by the master commissioner was error.

The statute governing the appointment and powers of a master commissioner in the St. Joseph Circuit Court is IC 33-4-1-75.1:

"St. Joseph circuit court; master commissioner; powers

Sec. 75.1. (a) Subject to subsection (1), the judge of the St. Joseph circuit court may appoint a master commissioner, who must be a competent attorney in good standing and a resident of the county after his appointment. The master commissioner's appointment must be in writing. The master commissioner continues in office until removed by the judge.

(b) A master commissioner of the St. Joseph circuit court may administer all oaths and affirmations required by law, take and certify affidavits and depositions, and issue subpoenas for witnesses whose testimony is to be taken before him. The master commissioner has the same power to compel the attendance of witnesses and to punish contempts as the judge or the court has. The master commissioner may conduct preliminary hearings in criminal matters and issue search warrants and arrest warrants and fix bond thereon, and he may enforce court rules.

(c) A master commissioner may hear evidence upon and report his findings to the judge of the court for each probate, civil, criminal, and other matter referred to the master commissioner by that judge. However, the judge of the court shall:

(1) make the final judgment in such a matter; and

(2) in a criminal case tried by the court, conduct all sentencing hearings in such a case.

\*        \*        \*        \*        \*        \*

(f) The judge of the court may limit any of the rights or powers of the commissioner specified in subsection (b), (c) or (g), and the judge may specifically determine the duties of the commissioner, within the limits established in subsections (b), (c) and (g).

"(g) A master commissioner of the St. Joseph circuit court may serve as a judge pro tempore or a special judge of the court but is not entitled to additional compensation for such service.

\*        \*        \*        \*        \*        \*

(*l*) Notwithstanding subsections (a) through (k), a master commissioner of the St. Joseph circuit court may not serve after December 31, 1986, and the judge of the St. Joseph circuit court may not appoint a master commissioner after December 31, 1986.

---

**2.** "(B) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Reference shall be allowed when the parties agree prior to trial as provided by these rules or by statute."

(m) This section expires January 1, 1987. As added by Acts 1980, P.L. 188, SEC. 1. Amended by Acts 1981, P.L. 174, SEC. 2."

According to the statute, the judge may assign specific duties to the master commissioner, e.g., hear and report on all domestic relations cases. The master commissioner continues in office until removed by the judge and may serve as a judge pro tem. Moreover, the statute contemplates the regular and ongoing use of a master commissioner until January 1, 1987 when the statute expires. Consequently, when a master commissioner is properly appointed according to the statute, as Cox was,[3] TR 53 does not apply.

*Issue 2*

■ John maintains that the trial court erred in finding a substantial and continuing change of circumstances that made the original support order unreasonable. In addition, he asserts that in ordering an increase in child support the trial court converted a property settlement into alimony which is prohibited under IC 31–1–11.5–9(c).[4]

The standard of review regarding a modification of child support is whether the trial court abused its discretion. *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157. We will not reweigh the evidence or judge the credibility of witnesses, but will only consider evidence or reasonable inferences therefrom most favorable to the judgment and affirm if there is substantial evidence to support the finding. *Payson v. Payson* (1982), Ind.App., 442 N.E.2d 1123. We will reverse for an abuse of discretion only when a modification is clearly against the logic and effect of the circumstances before the trial court. *Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820.

■ The court in the 1982 dissolution proceeding, in determining child support, found that Mary would have limited financial resources and that in 1981 John had a secure job making $348.86 net weekly earnings. Accordingly, John was ordered to pay $124 per week in child support.

The trial court adopted the master commissioner's finding that Mary was employed in a clerical position and had been temporarily off work from November 1982 to February or March 1983 due to injuries from a car accident. During recuperation her monthly income, including child support, was $662. Her monthly expenses, including the first mortgage, were $647. In 1982 Mary's net income was $5,189.16. In 1982 John's net income was $18,576.58. Subsequent to the dissolution proceeding, John received a $.30 per hour wage increase. The trial court found that John's weekly paycheck deductions were reduced due to his bankruptcy, and that his weekly net income for 1983 (through January 23) was $514.27. In addition, the court noted that prior to John's bankruptcy the monthly payment on the second mortgage was $226 and the monthly payment on the van was $180 for a total of $94.42 [sic] per week. Finally, the court found that the second mortgagee sued to foreclose on the family dwelling and had received judgment. The court determined that the resulting increased costs for suitable housing and the loss of the van, which Mary needed to maintain her employment, were a substantial change in circumstances affecting the children's needs.

In light of these findings we cannot say that an increase of $44 per week in child

---

**3.** Pursuant to a writ of certiorari issued by this court on its own motion, the Clerk of the St. Joseph Circuit Court transmitted relevant order book entries of the court showing the proper appointment under IC 33–4–1–75.1 of Dempsey A. Cox as Master Commissioner of the St. Joseph Circuit Court during the time period relevant here.

**4.** "Sec. 9 Final Decree

(c) The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court. As amended by Acts 1979, P.L. 273, SEC 12."

support was an abuse of discretion or that no reasonable person could conclude there was a substantial change in circumstances. The trial court's finding of a substantial and continuing change of circumstances is affirmed.

## Issue 3

■ John filed for bankruptcy on September 10, 1982. Mary filed an objection to discharge in the United States Bankruptcy Court to declare the second mortgage non-dischargeable. John asserts that Mary's petition for modification of child support is an attempt to subvert the jurisdiction of the bankruptcy court in that it serves as an alternative route to declare the second mortgage non-dischargeable by converting the debt into increased child support.

In response, Mary asserts that the answer to this issue lies in determining what the trial court did and did not do. The court did determine that a substantial and continuing change of circumstances which justified a modification of the original court order of support had occurred. The trial court did not order John to pay any pre-petition debts nor did it determine the dischargeability of these debts. We agree.

The trial court properly did not concern itself with the issue of dischargeability of the second mortgage or the lien on the van. Its decision was made regardless of the bankruptcy court's action regarding the prepetition debts. The trial court focused on the status of the parties as of the date the petition for modification was filed and whether, as of that date, a substantial and continuing change in circumstances had occurred. Certainly one change in circumstances considered by the court was John's bankruptcy and its effect on his children. In fact, the court found that the second mortgagee had acted to foreclose on the house, which would directly affect the children's standard of living.[5]

Our state courts have sole jurisdiction to modify child support under IC 31–1–11.5–17. This is what the court did here. Its decision did not infringe upon the jurisdiction of the bankruptcy court. The trial court's order modifying child support is affirmed.

## Issue 4

■ On February 21, 1983 the trial court entered its order modifying child support effective October 22, 1982. John maintains that the trial court erred in granting retroactive relief based on the general rule that an order for modification of support may be prospective only. *Jahn v. Jahn* (1979), 179 Ind.App. 368, 385 N.E.2d 488.

This issue was recently addressed in *In re. Marriage of Wiley* (1983), Ind.App., 444 N.E.2d 315. Judge Shields noted in dicta that:

"Retroactive modification of support is error. *Jahn*, 385 N.E.2d at 490. However, the trial court did not make a retroactive modification within the meaning of *Jahn* and its progeny. Here Husband filed a petition to modify, signaling an apparent significant and continuing change in circumstances warranting a modification of the dissolution decree. This fact differentiates this case from one where a trial court grants modifications for payments due and payable prior to the filing of the petition to modify.

The question of payments accruing after the filing of a modification request is one of first impression in Indiana. However, a majority of the courts of other states which have considered the question have held a trial court may make modifications effective as of the date the petition is filed. *Trezevant v. Trezevant* (1979), D.C., 403 A.2d 1134 (increase; *Movius v. Movius* (1974), 163 Mont. 463, 517 P.2d 884 (decrease); *Goodman v. Goodman* (1962), 173 Neb. 330, 113 N.W.2d 202 (decrease). *See* 6 A.L.R.2d 1328 Sec. 24 (1949) (decrease); 52 A.L.R.3d 165 Sec. 4 (1973) (increase).

Further, the Uniform Marriage and Divorce Act follows the majority rule. Marriage and Divorce Act Sec. 316, 9A

---

**5.** It may also be noted that the weekly payment amount on the lien and second mortgage totalled $93.70, while weekly support was increased by $44.

U.L.A. 183 (1974).[4] Colorado adopted the Uniform Act and allows modifications effective as of the filing date of the modification petition. *In re. Marriage of Edwards* (1977), 39 Colo.App. 26, 560 P.2d 849. *See also Brettschneider v. Brettschneider* (1982), 113 Misc.2d 861, 449 N.Y.S.2d 912 (Alimony may be awarded effective to date of filing of divorce); *Quick v. Quick* (1982), 305 N.C. 446, 290 S.E.2d 653 (On remand, alimony may be awarded retroactive to first divorce hearing); *Barrett v. Barrett* (1981), S.D., 308 N.W.2d 884 (Trial court granted support back to date of first divorce hearing.)

We adopt the majority rule and hold a trial court has discretion to make a modification relate back to the date a petition to modify is filed. It follows, then, a trial court has discretion to make the modification effective as of any ensuing date after a petition to modify is filed.

[4] "[T]he provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable ...." Marriage and Divorce Act Sec. 316, 9A U.L.A. 183 (1979)."

444 N.E.2d at 318–19.

We agree and adopt the majority rule. We hold that a trial court has discretion to order a modification of child support effective as of the date the petition to modify is filed. Any other result would be inconsistent with the purposes of the changed circumstances rule. The needs of the children, upon which the court focuses in determining whether a substantial and continuing change of circumstances has occurred, are examined as of the date the petition is filed. If the court finds that a modification of child support is justified, then the court has discretion to order payments to be effective from that date. To grant modification of support only from the date of the court's order detracts from the purposes of the changed circumstances rule and serves to encourage and benefit dilatory tactics.[6]

Where the court's order contains an effective date subsequent to the date the petition is filed, we will review it only for an abuse of discretion. *Tucker v. Tucker* (1980), Ind.App., 406 N.E.2d 321. The appellant must demonstrate that the trial court's order is clearly against the logic and effect of the facts and circumstances before it or the reasonable, probable and actual deductions to be drawn therefrom. *Summerlot, supra.*

The trial court found that foreclosure proceedings had begun on the family dwelling which the court in the dissolution decree had found necessary to provide a home for the children. The trial court concluded that, based on its findings regarding the parties' respective incomes, Mary would be unable to maintain the family dwelling or keep the van she required as transportation to work. The trial court determined that the loss of either or both the family dwelling or the van would have a substantially detrimental effect on the children's standard of living. Given these findings and conclusions, we cannot say the trial court abused its discretion. The trial court's order granting modification of the support order effective October 22, 1982 is affirmed.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

[6] We do not find nor do we imply that delaying tactics were present here. However, a significant policy justification for the rule in other jurisdictions is to prevent this kind of abuse. *See, e.g., Martin v. Martin* (1981 2d Dept.) 82 App.Div.2d 431, 441 N.Y.S.2d 828.