In re Ruby Williams BRABHAM, Debtor.

Ruby Williams BRABHAM, Plaintiff,

v.

James BRABHAM, Jr., Defendant.

Bankruptcy No. 93–74746.
Adv. No. 94–8282.

United States Bankruptcy Court,
D. South Carolina.

May 19, 1995.

Janne Berry Osborne, Orangeburg, SC, for Ruby Williams Brabham.

Norma A.T. Jett, Bamberg, SC, for James Brabham, Jr.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court in this reopened case by way of an adversary proceeding filed by the Plaintiff (also referred to herein as "Debtor" or "Wife") which seeks a determination of dischargeability of obligations due the Defendant (also referred to herein as "Husband"), the Debtor's former husband, an injunction against the Defendant to prohibit his modification of their Divorce Decree, a finding of contempt

against the Defendant for the violation of the discharge injunction imposed by 11 U.S.C. § 524(a) [1] and for damages for such violation. The Defendant answering the Complaint asserts that the obligations owed him by the Plaintiff have not been discharged and that his actions in the Family Court for the First Judicial Circuit, Orangeburg County, South Carolina ("Family Court") were not collection attempts but actions seeking that Court's reconsideration of the Divorce Decree through its equitable powers under Rule 60(b)(5) of the South Carolina Rules of Civil Procedure. After a pretrial conference in this proceeding, the parties both filed Motions for Summary Judgment and have stipulated on the record that no genuine issues of fact remain before this Court in this proceeding. The Court therefore makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The Debtor/Plaintiff as Wife and Defendant as Husband, were divorced by Final Decree of Divorce ("Divorce Decree") of the Family Court dated June 8, 1993 and entered on June 23, 1993. The Divorce Decree incorporated terms of a separation agreement previously reached by the parties. The Divorce Decree provided for the dissolution of the marriage, custody, visitation and support of one child born of the marriage as well as for an equitable division of marital assets and debts.

2. The Divorce Decree in Section I provided custody of the minor child to the Debtor. The Husband was provided visitation according to an agreed schedule and is to pay $75.00 per week child support until his retirement at which time it was to be reduced to $35.00 per week subject to further possible modification in the future.

3. Section II of the Divorce Decree provides for an equitable division of assets and debts as follows:

A. The Debtor was to be responsible for and pay two credit card debts, SCN Master Card and Household Finance Corp., which then totalled $5,320.83.

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

The Defendant was to be responsible for and pay five credit card debts which then totalled $9,758.82. Each party agreed to hold the other harmless for the debts of which each was responsible to pay.

B. The Defendant was to receive all furniture and household items listed in the Divorce Decree. That list indicated a cost/value of those items to be $15,853.22. There was no mention of furniture and household items being received by the Debtor.

C. The parties were to receive the automobiles in the possession of each at the time, be respectively responsible for payment of all debt and expense associated with each automobile, and hold the other harmless for the debt associated therewith.

D. The military pension to be paid the Defendant upon his retirement was determined to be marital property and further that the Debtor was to receive twenty percent (20%) of that retirement benefit with each party assuming the respective tax liability associated with that division of the retirement benefit.

4. The Divorce Decree in Section III indicated a mutual waiver of alimony and respective attorneys fees. Section IV indicated a mutual agreement to be restrained from "coming about, bothering, harassing or contacting the other".

5. The Divorce Decree granted a Divorce and adopted the separation agreement of the parties as aforestated and made its terms a part of the Order of the Court as of June 23, 1993.

6. The Debtor filed a voluntary petition under Chapter 7 of Title 11 United States Code of Laws on September 29, 1993.

7. W. Ryan Hovis was appointed as the Chapter 7 Trustee on October 1, 1993.

8. In the Schedules and Statement of Affairs filed in the bankruptcy case, the Debtor did not list the Defendant/Husband as a creditor nor did she list her obligations or debts to him nor did she reveal her right to receive a portion of the Defendant's military retirement pay.[2]

9. As a result of the Debtor's failure to list the Defendant as a creditor, the Defendant did not receive a copy of the Notice of Commencement of Bankruptcy Case filed on October 7, 1993, nor a copy of the Discharge of Debtor issued January 14, 1994.

10. In her bankruptcy case, the Debtor did list those credit card creditors identified as her responsibility in the Divorce Decree.

11. The Divorce Decree did not specifically reserve jurisdiction in the Family Court to modify or alter the division of marital assets or debts.

12. As indicated by his Answer, the Defendant and his attorneys learned of the Debtor's bankruptcy filing by a letter from a former attorney for the Debtor dated November 5, 1993. Thereafter, the Defendant filed no appearance in the bankruptcy case.

13. As the result of their actual notice of the bankruptcy case, both the Defendant and his attorneys had adequate opportunity and means to learn of and appear in the administration of the Debtor's bankruptcy case.[3]

14. No deadline for the filing of claims was set by the Court because of the initial appearance to the Chapter 7 Trustee that the case was a no asset case.

15. The Chapter 7 Trustee filed a report of no distribution because of no available assets in the bankruptcy case on November 1, 1993.

---

2. While this Court does not take lightly the allegation made by the Defendant that the Debtor intentionally failed to disclose assets in her schedules and statements, this Court has reappointed the Chapter 7 Trustee in the Order reopening the case in order to allow him to determine whether the estate would have an interest in such property and/or whether the Debtor should be denied a discharge pursuant to § 727 for failure to disclose known assets.

3. The Defendant and his attorneys are deemed by this Court to have had actual notice of all aspects of the bankruptcy case, including the automatic stay, the opportunity to file a Complaint to determine dischargeability, and the discharge of the Debtor.

16. An Order of Discharge of Debtor was issued by this Court on January 14, 1994 and the Trustee was discharged from further duty and the case was closed by Order on that same day.

17. Neither Debtor nor Defendant sought a determination of dischargeability of obligations associated with the Divorce Decree during the bankruptcy case before it was closed on January 14, 1994.

18. The Defendant, through his attorneys, filed a Summons and Complaint (dated March 3, 1994) against the Debtor in the Family Court on April 4, 1994. The Complaint sought an Order of that Court which would hold the Debtor in contempt for failing to comply with the Divorce Decree regarding payment of joint credit card debts and require the Debtor's indemnification of the Defendant for those debts. The Complaint also sought an Order of the Family Court to modify the Divorce Decree retroactively because of the Debtor's bankruptcy filing and to award the full military retirement benefits to the Defendant, as well as attorneys fees and costs. A Notice of Hearing was also issued by the Defendant which notified the Debtor of a hearing on the Complaint on June 8, 1994. No ruling on the Summons and Complaint was issued by the Family Court apparently due to the Defendant's subsequent withdrawal of the pleadings.

19. On August 22, 1994, the Defendant, through his attorneys, filed a Motion for Relief from Judgment in the Family Court pursuant to Rule 60(b)(5) of the South Carolina Rules of Civil Procedure. The Motion sought relief from the Divorce Decree "on the grounds that it is no longer equitable that the judgment should have prospective application." The Motion further recites:

> The June 8, 1993, Order [Divorce Decree], attached hereto as Exhibit A, approved a property settlement which has become inequitable in light of wife's [Debtor's] failure to fulfill her obligations under the settlement. The agreement was intended to equitably apportion marital debt and property. Pursuant thereto, wife assumed $5,320.83 in marital debt, consisting of a Household Finance account and a SCN Bank Card Services account. In return husband assumed five other debts totalling $9,758.82, and agreed to pay wife twenty (20%) percent of each monthly payment from his military pension. Wife's resulting share of the pension is a monthly payment of $163.76. The Decree provides each party shall indemnify and hold harmless the other for their respective assumed debts. This was the *only* basis on which husband entered the agreement ... Subsequent to the divorce, wife filed for bankruptcy without listing husband as a creditor or formally notifying him. The bankruptcy case closed on January 14, 1994, so this Motion does not violate any stay ... Whether or not wife's obligations to the couple's creditors were discharged, her failure to pay has made this Court's judgment inequitable. Husband is now the object of collection efforts by the creditors. Husband requests the Court to vacate the Order of June 8, 1993, as to debt and property apportionment.

20. The Debtor filed a Motion to Reopen the bankruptcy case on August 29, 1994 in order to file an adversary proceeding against the Defendant for violation of the Discharge of the Debtor.

21. The Defendant objected to the reopening on September 1, 1994 and asserted that due to a lack of notice to him of the bankruptcy case, the bankruptcy did not discharge obligations to him, that the Debtor failed to disclose, or misrepresented, to this Court her interests in the military pension, and that his action in Family Court pursuant to Rule 60(b)(5) of the South Carolina Rules of Civil Procedure was proper before that Court.

22. The hearing on the motion to reopen was heard by this Court on October 31, 1994. At that hearing (and at the hearing on the Summary Judgment motions), the attorneys for the Defendant stipulated that the debts which were the subject of the hold harmless provision of the Divorce Decree were part of a property settlement and not part of a support agreement between the parties and that any obligation Debtor owed Husband was in the nature of a property settlement and not

support. After the hearing, the Court requested proposed orders from both parties.[4]

23. On November 1, 1994, in response to arguments heard October 5, 1994 on the Defendant's Motion for Relief from Judgment, the Family Court issued an Order which ordered the escrow of all military retirement benefits to the Debtor paid after October 4, 1994 with her attorney.[5] The Order also required the continued escrow of benefits previously withheld by the Defendant in the amount of $1,310.08 with his attorneys and held in abeyance a ruling which might have a retroactive effect on the award of benefits previously paid to the Debtor.[6]

24. As stipulated by counsel for the Defendant, the Defendant, in seeking a modification of the equitable division portion of the Divorce Decree, seeks to relitigate the entire division of marital property and debts and not merely adjust the division for the portion of joint debts unpaid by the Debtor. The Husband now seeks the full military pension.

25. On November 29, 1994, the Family Court entered its ruling which granted the Defendant's Motion for Relief from Judgment and vacated the portion of the Divorce Decree entitled "Equitable Division", determining that those issues should be re-litigated. The Order provides in full as follows:

> This matter came before the Court on plaintiff's Motion for Relief from Judgment pursuant to SCRCP 60(b)(5) asserting it is no longer equitable that the judgment have prospective application. After considering the arguments of counsel and applicable law, I agree and grant the Motion of James Brabham, Jr. [Husband], and thereby vacate the equitable division portion of the Final Decree of Divorce dated June 8, 1993, and filed in the Family Court on June 23, 1993.
>
> Rule 60(b)(5) of the *South Carolina Rules of Civil Procedures* provides as follows:

"(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons ...

(5) ... it is no longer equitable that the judgment should have prospective application.

There is no time limit prescribed as to subsection (5). The parties, pursuant to the equitable division agreement, apportioned marital assets and marital debts with the obvious understanding each would receive certain assets and each would pay certain debts. Approximately ninety (90) days after the issuance of the Divorce Decree, Ruby Brabham (Wife) filed a Petition in the United States Bankruptcy Court. Wife was later discharged by the Bankruptcy Court from a number of the debts she had agreed to undertake and pay. The debts from which she was discharged were those which the Husband was also obligated. The effect of Wife's bankruptcy discharge requires Husband to pay all debts that were assumed by Wife pursuant to the equitable division agreement. Wife's asset allocation is unaffected by the bankruptcy. This result is contended by Husband to be inequitable in its prospective application.

This Court is required by statute to make an equitable apportionment of marital property between parties to a divorce or other related proceedings. *Code of Laws of South Carolina,* Section 20–7–472 (as amended). The Decree provided the debt, primarily credit cards, to be divided as per the agreement of the parties. Each party agreed to hold the other harmless for their respective debts. The effect of a discharge by bankruptcy to Wife's debts, which were unquestionably marital joint debts, requires Husband to pay an additional Five

---

4. Due to other demands on her counsel's time, the Debtor requested until November 28, 1994 to submit a proposed Order. Proposed Orders were received from both parties on November 28, 1994.

5. The Family Court Order found the benefits being received by the Debtor to be $184.80 per month since June of 1994.

6. During this time, the bankruptcy case was not yet reopened so the automatic stay of § 362 was not operative.

thousand dollars ($5,000.00) plus interest on the credit cards.

This Court is mindful of federal bankruptcy law and its effect on the parties and any discharge which may occur. The substance of this action and the intention of this Court is not to affect the bankruptcy in any manner but simply to bring about an equitable division of property. At the time, the agreement may have been equitable, but has clearly become inequitable in its future application because of the fact Husband will now have to pay for and be responsible for additional debts he did not intend to assume in negotiating the agreement incorporated by this Court into the Divorce Decree.

Furthermore, it appears from the Decree the parties also negotiated the division of a military pension. Husband alleges to this Court, and Wife does not disagree, that Wife did not disclose this asset or prospective income during the entire bankruptcy proceeding. The Family Court Decree of Divorce allowed Wife to receive twenty percent (20%) of each monthly payment from Husband's military pension plan. Given the fact that Husband will now have to pay additional debts, it is unlikely that Husband would have agreed to give Wife twenty percent (20%) of his military pension had he known he would have to assume and pay for an additional Five thousand dollars ($5,000.00) in credit card debt. Clearly, the equitable division becomes inequitable in its future application when Husband is now required to be responsible for one hundred percent (100%) of the debts of the marriage when he had only contemplated being responsible for approximately sixty-five percent (65%) of the debts.

The bankruptcy case closed on January 14, 1994. This Motion was filed later and therefore does not interfere in any way with any automatic stay or discharge of Wife from her listed creditors. Nor is it a collection or contempt proceeding.

IT IS THEREFORE ORDERED Husband's Motion pursuant to SCRCP Rule 60(b)(5) is hereby granted and the portion of the Decree of Divorce entitled "Equitable Division" is hereby vacated and shall be re-litigated; and,

IT IS FURTHER ORDERED The matter shall be rescheduled for a hearing on equitable apportionment of assets and debts as soon as practical.

IT IS SO ORDERED.

26. This Court issued an Order on December 12, 1994 which reopened the bankruptcy case and required that any action proposed to be taken by the parties be initiated within fifteen (15) days of that date.

27. The Debtor's Complaint in this adversary proceeding was filed on December 21, 1994. The Answer was filed on January 19, 1995. After the pretrial conference on February 13, 1995, cross Motions for Summary Judgment were filed and heard by this Court on March 27, 1995.

28. During the course of the proceedings, the parties have submitted into evidence by stipulation the following Family Court pleadings or Orders [7]:

—Divorce Decree and Judgment of June 23, 1993

—The Summons and Complaint for Contempt and Notice of Hearing of April 4, 1994

—The Notice of Motion and Motion for Relief from Judgement pursuant to Rule 60(b)(5) of August 22, 1994

—The Order of the Family Court filed November 1, 1994

—The Order of the Family Court filed November 29, 1994

### CONCLUSIONS OF LAW

 This case presents issues regarding the interaction between federal bankruptcy laws and state domestic relations laws and the respective courts that enforce and interpret such laws. In construing this relationship, this Court must first recognize the con-

---

**7.** No affidavits, depositions (or testimony in any form), or other evidence have been submitted by either party.

current jurisdiction of both courts over issues regarding dischargeability of debts pursuant to § 523(a)(5). 3 *Collier on Bankruptcy* ¶ 523.15[6] (15th ed. 1989). This Court is particularly mindful of the Fourth Circuit Court of Appeals' recognition that the "state family court has special expertise in domestic matters to which the bankruptcy court owes significant deference" *Robbins v. Robbins,* 964 F.2d 342, 345 (4th Cir.1992) citing *Hisquerdo v. Hisquerdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). It is appropriate for bankruptcy courts to avoid incursions into family law matters [including property distribution] out of consideration of court economy, judicial restraint and deference to our state court brethren and their established expertise in such matters. *Id.,* p. 346, quoting *In re Graham* 14 B.R. 246, 248 (Bankr.W.D.Ky.1981).

■ However the Bankruptcy Court should exercise its jurisdiction to determine issues of the dischargeability of debts which are brought before it and must consider issues related to the enforcement of the discharge injunction of § 524. The Complaint in this case raises two primary related issues. First, the Court must determine whether the obligations which existed between the Debtor and her former Husband as a result of the Divorce Decree were discharged pursuant to § 523(a)(5) on January 14, 1994, and secondly, if the first issue is answered in the affirmative, this Court must decide if the actions taken by the Husband in the Family Court violate the Order of Discharge/Discharge Injunction issued by this Court.

## ISSUE 1

### Dischargeability pursuant to § 523(a)(5)

■ The Bankruptcy Code prohibits the discharge of a debtor's obligation to make alimony, maintenance or support payments to his or her former spouse. § 523(a)(5). Whether a particular debt is a support obligation or part of a property settlement (which is dischargeable) is a question of federal bankruptcy law, not state law. H.R.Rep. No. 595, 95th Cong., 2d Sess. 364, represented in 1978 U.S.Code Cong. and Admin.News 5963, 6320, 1978 U.S.Code

Cong.Admin.News 5787, 5963, 6173; S.Rep. No. 989, 95th Cong., 2d Sess. 79, reprinted in 1978 U.S.Code Cong. and Admin.News 5787, 5865, 1978 U.S.Code Cong.Admin.News 5783, 5835–41.

■ The burden of proving that an obligation is "actually in the nature of alimony, maintenance or support" is on the Plaintiff [party seeking a determination of nondischargeability] and must be proved by a preponderance of the evidence. *Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir.1986); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Combs v. Richardson,* 838 F.2d 112, 18 C.B.C.2d 487 (4th Cir.1988); *Whitson v. Middleton (In re Middleton)* 898 F.2d 950 (4th Cir.1990); *South Carolina National Bank v. Peeler (In re Peeler),* 92–71539, Adversary No. 92–8338 (Bankr.D.S.C. 9/15/94) (WTB).

■ The proper test of whether the payments are alimony, maintenance or support lies in proof of whether it was the intention of the parties that payments be for support rather than as a property settlement. *Melichar v. Ost,* 661 F.2d 300, 303 (4th Cir.1981). In the context of a voluntarily executed marital settlement agreement, the intent of the parties to that agreement is determinative of whether the obligation is in the nature of alimony, maintenance or support. *In re Long,* 794 F.2d 928, 931 (4th Cir.1986) (citing *Melichar, id.* at 302).

■ In the instant case, the parties have introduced into evidence the Divorce Decree entered on June 23, 1993 which incorporated the separation agreement between the parties. No other testimony or evidence relating to the intention of the parties was presented by way of the Motions for Summary Judgment or at the hearing on those motions. At the hearing on the Motions for Summary Judgment, the attorneys for the Defendant conceded that any obligation owed the Husband by the Debtor was in the nature of a property settlement and not in the nature of support. The parties further stipulated that no other evidence would be produced at trial and requested a disposition of the adversary proceeding through the grant-

ing of one of the parties' Summary Judgment Motions.

In her Chapter 7 case, the Debtor listed several credit cards and consumer loans as creditors, including an indebtedness to SCN Master Card and Household Finance Corporation, the two joint debts which in the Divorce Decree the Debtor agreed to assume in full. Nothing in the record of the case indicates that these debts were not discharged by the bankruptcy. However, the Debtor also had a separate obligation to hold her former Husband harmless from collection of those debts by virtue of a provision of the Divorce Decree. Therefore, this Court must determine if the hold harmless obligation to her husband was discharged. This determination again depends upon whether the hold harmless agreement was an obligation arising out of a property settlement, which is dischargeable, or one in the nature of alimony, maintenance or support, which would be nondischargeable.[8]

This district has previously considered this issue. *In re Cribb*, 34 B.R. 862 (Bankr. D.S.C.1983) (JBD). In *Cribb*, this Court set forth a two-prong test for determining whether a debt which arises from a marital order will be declared nondischargeable. "First, the obligation must be payable to a spouse, former spouse, or child; second, the obligation must be in the nature of alimony, maintenance or support." *Cribb, supra* at 864, citing *Summer v. Summer* 20 B.R. 24 (Bankr.D.S.C.1982).

This Court, in *In re Carrigg*, 14 B.R. 658 (Bankr.D.S.C.1981) concluded that in that case there was no evidence that the obligations assumed under a "hold harmless" agreement were payable to or owed directly to the former spouse or child or that they represented property or services necessary to the support and maintenance of the Debtor's former spouse and child. In the 1984 opinion of *In re Leopard*, 40 B.R. 651 (Bankr. D.S.C.1984) (JBD), this Court found the parties intention was to treat the subject payments as a division of property and not support. In determining this intent, the Court

primarily examined the language of the divorce decree itself. In *In re Rose*, 87–03608, C88–0222, slip. op., (Bankr.D.S.C. 2/10/89) (JBD), this Court considered a hold harmless agreement concerning a Visa credit card debt. While the Court found that the hold harmless agreement was arguably payable on behalf of or to a former spouse, it utilized the following criteria in determining whether the obligation was in the nature of alimony, maintenance or support:

1) whether the divorce decree intended to provide support;
2) whether the effect of the award was to provide support to insure daily needs;
3) whether the amount is within the realm of traditional notions of support; and
4) whether the apportionment of payment is within the spouses reasonable ability to pay.

The Court concluded in that case that it was not the intent of the parties that the agreement provide future support or alimony under the guise of a hold harmless clause.

This Court in *In re Burns*, 91–4465, C91–8307, slip. op., (Bankr.D.S.C. 6/16/92) (JBD) found a hold harmless provision regarding joint credit card debts to represent property or services necessary for the support and maintenance of the spouse and dependant daughters because:

The debts are for household obligations and routine living expenses, which, if not assumed by the debtor, would result in a severe diminution in the plaintiffs [non-debtor spouse] and their child's standard of living.

*Burns, supra.* In the opinion of *In re Barr*, 92–71579, C92–8125, slip. op., (Bankr.D.S.C. 9/21/92) (WTB), this Court found that an obligation to pay one half of a mortgage payment was in the nature of a property settlement and therefore dischargeable by taking into account in what section of the divorce decree the obligation was created and found that the "marital agreement exhibits a structured drafting that purported to deal with separate issues in totally distinct seg-

---

**8.** The Defendant/Husband had actual notice of the Debtor's bankruptcy petition despite not being listed as a creditor and therefore may not assert that any obligation to him was not discharged by virtue of § 523(a)(3).

ments of the document" citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir.1986). The Court also considered the fact that the recipient spouse had no children to support and examined the treatment of the payments for tax purposes.

Additional factors have been utilized by other circuits in making this determination in connection with hold harmless obligations. The Seventh Circuit set forth four factors to be used in determining intent:

1) whether the settlement agreement includes provisions for payments to the ex spouse;

2) whether there is any indication that the hold harmless provision was intended to balance the relative incomes of the parties;

3) whether the hold harmless clause is in the midst of provisions allocating property; and

4) whether the hold harmless provision describes the character and method of payment.

*In re Coil*, 680 F.2d 1170, 1172 (7th Cir.1982), citing *In re Woods*, 561 F.2d 27 (7th Cir. 1977).

In citing the Tenth Circuit's criteria as established in *In re Goin*, 808 F.2d 1391 (10th Cir.1987), the bankruptcy court for the District of Nebraska listed the following factors:

1) earning power of the parties and whether there was an imbalance of income;

2) whether the agreement fails to explicitly provide for spousal support;

3) whether there was a division of property and a division of debts related to that property;

4) whether the payments are made directly to the former spouse and are made in installments over time;

5) whether the obligation terminates on remarriage or death;

6) the nature of the obligations assumed and whether the obligation is to pay expenses for necessities of life;

7) whether the former spouse was shown to have suffered in the job market or was otherwise disadvantaged because of any dependent position held in relation to the debtor during the marriage;

8) the age and health of the former spouse; and

9) whether the provision assuming the debt appears in the midst of provisions allocating property and whether the provision describes the method of payment.

*In re Cline*, 114 B.R. 665 (Bkrtcy.D.Neb. 1990) citing *In re Goin*, 808 F.2d 1391 (10th Cir.1987); *In re Coil*, 680 F.2d at 1171–72; *In re Bell*, 47 B.R. 284 (Bkrtcy.E.D.N.Y. 1985).

From examining the Divorce Decree in this case, this Court recognizes the following as factors in the determination of the intent of these parties:

1. The Husband received significant amounts of furniture and household items. There was no mention of items of the same nature being received by the Debtor.

2. The Debtor received primary custody of the child of the marriage and was to receive child support from the Husband.

3. The Husband was to receive upon retirement a monthly military retirement benefit. This benefit was clearly the most significant income benefit of the parties. There was no indication of the Debtor's income or employment potential either at the time of the Divorce and none has been received by the Court regarding the present respective incomes of the parties other than the military benefit.[9]

4. No actual payments from Debtor to Husband of any nature are indicated in the Divorce Decree.

9. The Schedules and Statement of Affairs (at Schedule I and J) filed by the Debtor in her bankruptcy case on September 29, 1993 did indicate her employment at that time with Youngs Food Stores in Cordova, South Carolina at which she earned a gross monthly income of $1,170.00 with a net monthly income of $929.00. Schedule I also indicated monthly child support of $150.00 for a total income of $1,179.00. Schedule J showed total monthly expenses of $859.00.

5. The hold harmless provision is clearly a part of a section of the Divorce Decree (and presumably the pre-existing separation agreement) dealing with the equitable division of property. The Divorce Decree parallels the separation agreement and appears to be a structurally drafted document which intended to deal with issues in separate section.

6. Alimony was mutually waived. There was no mention of support or maintenance payments.

Based upon all the evidence and Defendant's stipulation at the hearing on the Summary Judgment Motions, and in consideration of the factors cited by this Court previously and the factors cited by the Courts in the Seventh and Tenth Circuits, this Court must conclude that in this case the hold harmless obligation to the Husband was in the nature of property settlement or division and therefore is dischargeable and was discharged in the Debtor's case on January 14, 1994.

■ Before the effect of this discharge of the hold harmless obligation on the Husband's right to modify the property division between the parties can be determined, it is helpful to examine the nature of the Debtor's right to the military retirement benefits as determined by the Divorce Decree.

In a similar earlier decision, the South Carolina District Court recognized that "vested military retirement benefits constitute an earned property right" of the former non-retiring spouse. *In re Paez,* 2:94–1791–18, slip op., (D.S.C. 9/20/94) citing *Tiffault v. Tiffault,* 303 S.C. 391, 401 S.E.2d 157, 158 (1991). The District Court held that "the majority of federal courts addressing this issue have held that the interests in military retirement benefits becomes absolute upon the granting of the divorce (and, as the sole and separate property of the spouse are not subject to discharge). *In re Paez, supra,* slip op. at 2, citing *Sadowski v. Sadowski* 144 B.R. 566, 567 (Bankr.M.D.Ga.1992).

In this case, it appears that the Debtor's right to receive twenty percent (20%) of the Husband's retirement benefits vested upon the entry of the Divorce Decree as a property settlement or division of property and is being made directly to the Debtor by the military as part of a Qualified Domestic Relations Order.

## ISSUE II

### Violation of the Discharge Injunction

■ The Court must next turn to the central issue of the Complaint; whether the Husband through the Family Court can seek to reduce or modify the military retirement benefits to the Debtor or modify the property settlement in any way because of the Debtor's failure to pay joint debts and hold him harmless, based upon the discharge of both obligations in the Debtor's bankruptcy case.[10]

This Court has searched for authorities on this issue and sought not only to recognize the balance of the responsibilities between state domestic relations courts and the bankruptcy court, but also more importantly, to provide simple justice to these parties.

To begin with, general treatise authority indicates an action such as has been taken by the Husband in this case is not proper:

It is clear that once a property settlement obligation is discharged in bankruptcy, it cannot be reimposed by the state court, nor may a new property division be imposed. Quite arguably, basing a new obligation for support on the fact that a property settlement has been discharged is also nothing more than an "end run" around the bankruptcy discharge, an attempt to collect the discharged obligation, or part of it, in another form. As such, a motion to modify support based upon the discharge could be construed as contempt of the discharge injunction in section 524(a)(2) against the commencement of any action to collect a discharged debt. Indeed, a state

---

10. This Defendant and his attorneys had actual notice of the bankruptcy case of the Debtor and had adequate opportunity to learn of the issuance of the Debtor's discharge on January 14,

1994. It this Court's view, the Defendant cannot rest on his apparent lack of receipt of an actual copy of the Discharge of Debtor.

court's action to increase the support obligation could even be considered an action discriminating against the debtor based upon a discharged debt in violation of section 525(a). The fact that a party to a proceeding for alimony and support has filed a bankruptcy and discharged debts, without more, cannot be a basis for less favorable treatment in the family court. *Collier Family Law and the Bankruptcy Code* ¶ 6.10 (Release No. 4, April 1994).

While there is a myriad of cases on this issue, the courts have split on the results. Courts that have allowed the state family courts to modify the relationship of the parties after one spouse has filed for bankruptcy include: *In re Danley,* 14 B.R. 493 (Bankr. D.N.M.1981) (the bankruptcy court refused to reopen the bankruptcy case because state court had appropriate jurisdiction and in effect allowed state court to modify support based on debtors discharge of joint debts; *Kruse v. Kruse,* 464 N.E.2d 934 (Ind.App. 3 Dist.1984) (the state court allowed an increase in child support because the debtors failure to pay second mortgage resulted in loss of families home which directly affected children's standard of living); *Hopkins v. Hopkins,* 487 A.2d 500 (R.I.1985) (the Family Court restored an award of alimony (despite its earlier waiver) because of debtor's bankruptcy and required debtor to indemnify spouse on joint debts to that degree); *In re Eckert,* 144 Wis.2d 770, 424 N.W.2d 759 (App.1988) (the state court modified maintenance requirements because of discharge of debts because "where payment by debtor of the debts later discharged was significant factor in the initial award, and jurisdiction was carefully reserved to deal with any changed circumstance, it must be conceded that a bankruptcy discharge is such a changed circumstance as to permit state court action); *Ganyo v. Engen,* 446 N.W.2d 683 (Minn.Ct.App.1989) (benefit of discharge of debts can be seen as a changed circumstance so as to allow state courts modification of maintenance reward, especially when the divorce decree provided for reevaluation in case of bankruptcy); *Siegel v. Siegel,* 243 N.J.Super. 211, 578 A.2d 1269 (1990) (the state court increased alimony during bankruptcy because debtor's bankruptcy caused delays in payment of her equitable distribution payment); and *In re Baird* 152 B.R. 636 (D.Colo.1993) (the District Court applied res judicata rules to bar bankruptcy courts consideration of state court's allowance of support because debtor had discharged a property settlement).

The California state courts have reiterated the basic reasoning behind the position of allowing the Family Courts to act. "The federal courts and the state courts are engaged in a cooperative enterprise, not a competitive one." *In re Clements,* 134 Cal. App.3d 737, 184 Cal.Rptr. 756 (1982). In *Clements,* the court refused to set aside as an abuse of discretion the trial courts order permitting the husband to reduce support payments by the amount of payment on joint debts discharged by the debtor wife in bankruptcy. The Court however, noted the decision of *In re Cohen,* 105 Cal.App.3d 836, 164 Cal.Rptr. 672 (1980) where the state court disallowed such a modification and found that it would "frustrate the intent and purpose of the federal bankruptcy act and violate the supremacy clause of the United States Constitution".

In reviewing this entire line of cases, it is very apparent that the issue before the family court was a modification of *alimony, support or maintenance,* which are nondischargeable awards pursuant to § 523(a)(5), and not a dischargeable property settlement.

Other courts that have prohibited the state courts to modify the rights of the parties based upon the filing of bankruptcy by one spouse include *In re Williams,* 157 Cal. App.3d 1215, 203 Cal.Rptr. 909 (1984) in which the husband sought to offset against retirement income payments he owed the debtor wife because of the debtors failure to pay joint debts. In *Williams,* the court found that the retirement payments were a property division and "merely because payments were made periodically does not convert the property division into a provision for alimony, support or maintenance". Another decision from a California bankruptcy court found that the payments to the debtor were in the nature of a property settlement and not spousal support because support had

been waived, and therefore did not allow modification and enjoined the state court's order. *In re Edwards,* 91 B.R. 95 (Bankr. C.D.Cal.1988). In *Edwards,* the court held:

> Therefore the effect of the state court order (which required the debtor to retroactively pay discharged joint debts) was not to make an adjustment in spousal support based upon an increased need, but rather to circumvent the bankruptcy laws and find a way to make a discharged debt in effect nondischargeable.

*Edwards, supra.*

The Wisconsin Court of Appeals, in a case similar in fact(s) to the case before this Court, found that a family court had abused its discretion in reopening a divorce judgment and modifying a property settlement after the discharge of the debtors debt thereunder. *In re Spankowski,* 172 Wis.2d 285, 493 N.W.2d 737 (1992). *Spankowski* involved a debtor's obligation to pay one half of a state retirement pension to the spouse. After the filing of bankruptcy, in which the non-debtor spouse did not dispute or seek a determination of dischargeability, the non-debtor spouse sought to use the family court's equitable authority to set aside the divorce judgment. The Court denied the family court's right to do so. This case also cites with approval *Coakley v. Coakley,* 400 N.W.2d 436, 440 (Minn.Ct.App.1987) and *Fitzgerald v. Fitzgerald,* 144 Vt. 549, 481 A.2d 1044 (Vermont 1984). In these cases, the Courts clearly were examining subsequent family court efforts to modify property settlement. In this Court's view, whether the family court seeks to subsequently modify support, maintenance or alimony as opposed to a property settlement, is the paramount factor in the determination of whether such action violates a prior bankruptcy discharge.

In this instant case, counsel for the Defendant rely heavily upon the decision in *In re Carter,* 156 B.R. 768 (Bankr.E.D.Va.1993). In *Carter,* the bankruptcy court declined to reopen a Chapter 7 case to enforce collection of an equitable distribution award arising out of a divorce decree *entered after* the debtor's discharge. The *Carter* court premised its decision upon the fact that based on the evidence presented by the parties, it could not determine whether the equitable distribution award was a discharged prepetition debt under a separation agreement or a debt arising post-petition and therefore not discharged under the divorce decree. The parties in *Carter* remained married and cohabitated after their separation agreement for almost a year after the date of the bankruptcy petition. That court deferred to the ongoing jurisdiction of the family court to determine the dischargeability of debts.

In this case, there is no question that the property settlement (by way of the Divorce Decree and pre-existing Separation Agreement) occurred pre-petition and therefore was discharged by the bankruptcy case. The Family Court has not determined the dischargeability of the obligations between the parties and this Court has now properly been asked to do so in the reopened case. Even the *Carter* court recognized that "the [Bankruptcy] Code does provide post discharge protection from collection from all dischargeable debts. *Id.,* at 771. In these ways, the *Carter* case is distinguishable from the instant case before this Court.

In the instant case, it is apparent from the Family Court's final Order of November 29, 1994 (issued upon the Husband's request) that the Family Court specifically intended to modify the property settlement provisions of the Divorce Decree received by the Debtor due to the discharge by the Debtor of certain joint debts, but did so based upon equitable grounds and in utilizing its equitable powers to modify its own Divorce Decree. The Defendant, through his attorneys, argues that regardless of the discharge of the obligations between the Debtor and her Husband, the Family Court could "realign the relationship" within its equitable authority. This Court disagrees.

This Court is inclined to view such an attempt by the Husband to reduce vested property rights of the Debtor as an "end run" around the bankruptcy discharge and not as an allowable basis or change of circumstances. Merely because the property settlement is realized through periodic payments which extend into the future does not

change the character of the vested rights nor permit an offsetting of the discharged debts.

## CONCLUSION

This Court views the Husband's efforts to achieve payment of the joint debts or hold harmless provisions as efforts to punish the Debtor for her failure to pay discharged debts, first through a petition for contempt for the Debtor's failure to pay the indebtedness to the third parties and then through the device of a Motion for Equitable Relief from Judgment. This Court views such efforts to be violations of the discharge injunction provided by § 524 of the United States Bankruptcy Code and this Court's Order of January 14, 1994.

In making this ruling, this Court in no way seeks to imply that it has authority over the Family Courts of this State or that this Court does not acutely recognize the Family Court's expertise on domestic issues. It is not meant to unduly inhibit the Family Court's consideration of dischargeability issues over which it has concurrent jurisdiction, or to effect the Family Court's consideration of circumstances or a change of circumstances between formerly married parties, one of which may have received a discharge in bankruptcy. However, it is one of this Court's responsibilities to enforce the federal bankruptcy laws. The actions to vary a property division solely due to, and because of, the discharge of joint debts, or related hold harmless obligations, taken by the Defendant/Husband in this case, constitute a violation of federal bankruptcy law and therefore must be addressed by this Court. In contravention to the argument expressed by the Defendant's attorneys, this Court views the Defendant's efforts as de facto collection actions, regardless of whether the Defendant is formally seeking a "dollar for dollar" exchange.

This Court also believes that any continued delay in the reassumption of payments of military retirement benefits to the Debtor as ordered under the original Divorce Decree constitutes a continuing violation of the discharge injunction.

A hearing shall be set before this Court to determine the issue of damages and other relief to be afforded the Debtor for the aforesaid violations of the discharge injunction. For the reasons stated within, it is therefore

**ORDERED,** that the Plaintiff's Motion for Summary Judgment is granted. It is further

**ORDERED,** that any continued delay in payments in military retirement benefits to the Debtor as ordered under the original Divorce Decree will constitute a continuing violation of the discharge injunction. It is further

**ORDERED,** that a hearing shall be set before this Court to determine the issue of damages and other relief to be afforded the Debtor for the aforesaid violations of the discharge injunction. It is further

**ORDERED,** that the Defendant's cross Motion for Summary Judgment is denied.

**AND IT IS SO ORDERED.**