**In re Kenneth M. RAY, Debtor.**

No. 00–10287.

United States Bankruptcy Court,
D. Maine.

May 18, 2001.

Kevin C. Wells, Rockland, ME, for movant.

Pamela J. Ames, Waterville, ME, for respondent.

### Memorandum of Decision

JAMES B. HAINES, Jr., Bankruptcy Judge.

Pending before me is Kenneth Ray's motion seeking an order imposing sanctions against his former spouse for violation of this court's discharge order. For the reasons set forth below, I will impose compensatory sanctions, in the form of counsel fees and costs, against Mr. Ray's former spouse, Rachel Ray, and her attorney, Pamela Ames, Esq.[1]

### Background

Kenneth Ray and Rachel Ray were divorced on March 27, 1997. The state court divorce judgment ordered the Rays to abide by the terms of their property settlement agreement dated February 5, 1997, and to hold each other harmless from the debts each had assumed in that pact.

The property settlement agreement provided that Kenneth was to assume and hold Rachel harmless from, *inter alia*, obligations on a Greenwood Trust Discover Card, a Household Credit Services Visa card, and a Taconnet Federal Credit Union credit card.[2]

Kenneth filed a voluntary petition for relief under Chapter 7 on March 3, 2000. Rachel Ray was listed as a creditor. She received the notice of case commencement issued by the bankruptcy court clerk.

Acting *pro se*, Rachel filed a timely complaint to determine the dischargeability of certain of Kenneth's obligations to her under the divorce judgment. More particularly, she urged that Kenneth should not be discharged from his obligations to her in connection with the Discover card, the Visa card, and the Taconnet F.C.U. credit card. The issues were joined, discovery ensued, and the matter was set for trial.

On June 19, 2000, with the dischargeability proceeding pending, Kenneth received his Chapter 7 discharge. The discharge order included the usual exception for "[d]ebts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged...."

Notwithstanding Kenneth's bankruptcy filing and the pending, yet-to-be-decided issue whether his obligations to Rachel would escape discharge, Rachel, through counsel, filed a "Motion for Contempt," dated August 21, 2000, in the Maine District Court, District Twelve, Division of Somerset. The motion asked that Kenneth be found in contempt for "willfully failing or refusing to obey" the state court divorce judgment with regard to "responsibility for debts." [3] More particularly, it stated:

> Kenneth Ray has filed for a discharge in bankruptcy (Case no. 00–10287) of the Visa debt of $8,900.00, the Discover card debt of $4,500.00, and the Taconnet Credit Union debt of $3,500.00 which he was ordered to be responsible for and

---

1. The facts are not in dispute. This memorandum sets forth my legal conclusions in accordance with Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52.

    Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, ("Bankruptcy Code" or "Code"), 11 U.S.C. § 101, *et seq.*

2. "It is further ordered and adjudged that the Plaintiff [Rachel Ray] and Defendant [Ken-

neth Ray] shall assume the debts and other obligations associated with the real property all as set forth respectively in the property settlement ..., and filed in the within captioned matter, and each party is ordered to hold the other harmless from the debts they have personally assumed in said property settlement agreement."

3. Motion for contempt at para. 2.

hold me harmless under section 6(c), 6(d), and 6(e) of my divorce judgment and incorporated settlement agreement. The creditors are pursuing me to pay the debts that he was ordered to pay and Kenneth Ray refuses to hold me harmless.[4]

For undisclosed reasons, the August 21, 2000, motion was not prosecuted immediately.

Rachel Ray's adversary complaint proceeded to trial on December 7, 2000. She appeared, without counsel, and made no meaningful showing why Kenneth's divorce-based obligations to hold her harmless in connection with the credit card accounts should be excepted from discharge under either § 523(a)(5)[5] or

§ 523(a)(15).[6] Final judgment entered in Kenneth's favor on December 12, 2000.

On January 10, 2001, Attorney Ames filed an amendment to the (still pending) state court motion for contempt on Rachel's behalf. It stated:

I filed an adversarial proceeding in the Bankruptcy Court, a copy of which is attached as Exhibit 1, to contest the dischargability [sic] of the Visa card debt, Discover card debt, and the Taconnet Credit Union debt. Said adversarial action was denied by Judge James B. Haines of the U.S. Bankruptcy Court on December 12, 2000. Therefore, Kenneth M. Ray has been discharged in Bankruptcy Court for the Visa card debt, the Discover card debt and the Taconnet Credit Union debt. There are

---

**4.** Motion for contempt at para. 3.

**5.** Section 523(a)(5) provides:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . . .
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]
For an outline of the substantive content and procedural operation of § 523(a)(5), *see Brasslett v. Brasslett (In re Brasslett)*, 233 B.R. 177, 188–89 (Bankr.D.Me.1999); *Marquis v. Marquis (In re Marquis)*, 203 B.R. 844, 847–

49 (Bankr.D.Me.1997); *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 295–99 (Bankr. D.R.I.1996).

**6.** Section 523(a)(15) provides:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . . .
(15) not of the kind specified in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]
For a discussion of § 523(a)(15)'s substantive content and procedural operation, *see In re Brasslett*, 233 B.R. at 182–87.

no further proceedings pending before the Bankruptcy Court. I have also had a judgment, a copy of which is attached as Exhibit 2, entered against me by Tacconet [sic] Federal Credit Union in the amount of $2000.00 and $69.83 in costs. The judgment was entered on August 11, 2000 and have subsequently been ordered pursuant to a disclosure hearing order, a copy of which is attached as Exhibit 3 dated December 13, 2000, to pay the judgment of Tacconet [sic] Credit Union judgment [sic] at a rate of $50.00 per month beginning January 5, 2001.

*Wherefore,* I ask this Honorable Court to amend my original Motion for Contempt to add the above provisions and to schedule a hearing on my Motion with a court date and order that a contempt subpoena be served on the other party, and such other relief as I asked for in my original Motion for Contempt.[7]

On January 17, 2001, the state court authorized issuance of a subpoena requiring Kenneth to appear, testify, and produce documents relevant to the amended contempt motion. Upon service of the subpoena, Kenneth sought relief in this court on an expedited basis. After a hearing, during which Rachel appeared *pro se* and explained that Attorney Ames was representing her in connection with the state court contempt proceedings, I issued an order enjoining Rachel, Attorney Ames, or others acting on Rachel's behalf, from "taking any steps to enforce Kenneth

Ray's now-discharged divorce-related obligations, including enforcement of any outstanding subpoenas requiring him to appear in state court for proceedings related to those obligations."[8] The order set the matter for further hearings and commanded Rachel and Attorney Ames to appear. They appeared and were provided an opportunity to supplement the record, to argue, and to brief the issues.

### *Discussion*

#### 1. *Procedural Posture*

Kenneth initiated proceedings to enforce § 524's discharge injunction by a pleading styled "Motion for Contempt of Court."[9] Our circuit has made it clear that an aggrieved debtor may enforce the discharge injunction by invoking § 105(a). *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 444 (1st Cir.2000)(no need to determine if a private right of action may be inferred from § 524 because a "remedy is readily and expressly available through another section of the Bankruptcy Code, namely § 105(a)"). A contempt proceeding is an appropriate vehicle by which a debtor aggrieved by violations of the discharge injunction may invoke § 105(a). *Id.* at 445 ("It follows ... that § 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have."). Pursuant to the bankruptcy court's statutory contempt powers, it may impose sanctions against an offending party. *Id.*[10]

---

7. Amended Motion for Contempt dated January 10, 2000.

8. Court Doc. No. 10.

9. Court Doc. No. 7.

10. The court observed that:
[I]t is clear ... that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages ... if the merits so require. Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages when creditors have engaged in conduct that violates § 524.... Therefore, we hold that § 524 is enforceable through § 105.

Neither Rachel nor Attorney Ames asserts that the *form* of action initiated by Kenneth is inappropriate to the ends he seeks or that either of them is entitled to more formal service of process, notice, or hearing than was provided them here. *Cf.* Fed. R. Bankr.P. 9020(b)(setting forth notice and hearing requirements for proceedings addressing contempt committed outside the presence of the bankruptcy court).

### 2. *Substance of the Offense*

■ Neither Rachel nor Attorney Ames disputes the facts underlying Kenneth's assertion that prosecuting the amended contempt motion in state court, including securing issuance of a subpoena to require his attendance at those proceedings, violated § 524. Rather, they contend that their post-discharge actions escape this court's scrutiny and sanction. Their position is less than clear, but viewed in any light, it displays such a fundamental misunderstanding of applicable law that comment is required.

The substance of § 524 is not at issue. Pertinently, it provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under § 727] as a person-al liability of the debtor, whether or not discharge of such debt is waived . . . ." § 524(a)(2). Fairly summarized, § 727(b) discharges an individual Chapter 7 debtor "from all debts that arose before the date of the order for relief under this chapter," subject to the exceptions set forth in § 523.

There is no doubt that Kenneth's divorce-sourced obligations to Rachel arose "before the order for relief" in his Chapter 7 bankruptcy case. The divorce judgment predates his bankruptcy filing by nearly three years. *See* § 301 (voluntary bankruptcy case is commenced by filing the petition; commencement of a voluntary case constitutes "an order for relief . . . ."). Thus, unless a § 523 discharge exception applied, his obligations to her under the divorce judgment would be discharged. And the only applicable exceptions for those obligations are found in § 523(a)(5) and § 523(a)(15). Rachel unsuccessfully litigated both those exceptions in her adversary complaint.[11]

Thus, Kenneth's obligations to Rachel were discharged. Yet, Attorney Ames amended the state court contempt motion, citing the result of the adversary proceeding as the *reason why* Kenneth should be held in contempt for failing to satisfy those

*Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d at 445 (citations omitted).

11. Rachel's complaint describes each of the accounts for which Kenneth was assigned responsibility in the divorce judgment, describes his "hold harmless" undertaking under the judgment, and asks that "the court determine the claim of the Plaintiff against the Defendant Kenneth M. Ray, to be nondischargeable pursuant to 11 U.S.C. (523) [sic]" Complaint, Adv. Pr. Doc. No. 3 (supplementing letter complaint), dated June 16, 2000. The pretrial order identified the adversary proceeding as "a § 523(a)(5) & (a)(15) dischargeability action."

Of course, only Kenneth's obligations to hold Rachel harmless for the credit card debts were properly before the court on Rachel's complaint. The dischargeability of Kenneth's obligations to the credit card issuers themselves is another matter entirely. *See In re Marquis,* 203 B.R. at 847 n. 5 (recognizing that a divorce obligation to hold an ex-spouse harmless from a debt creates an obligation between the debtor and the ex-spouse, separate and distinct from any obligation the debtor may owe to the creditor); *In re Dressler,* 194 B.R. at 304 (same).

self-same obligations![12]

Attorney Ames explains that she was aware of Kenneth's bankruptcy filing and was aware of Rachel's attempt to have Kenneth's divorce judgment obligations to her declared non-dischargeable. She claims she gave Rachel "little chance" of success in the adversary action and decided, instead, that there was a "better chance" of prevailing in state court after the bankruptcy court trial. That the result of that trial extinguished Kenneth's liabilities to Rachel did not deter her.

Attorney Ames's explanation for seeking to have Kenneth held in contempt for failing to pay obligations discharged in bankruptcy is opaque. Having heard her present it, at length, in open court, it remains unclear.

In the end, there are but three possible explanations: (1) Attorney Ames did not understand what was litigated in the adversary action; (2) Attorney Ames concluded that Kenneth's hold harmless obligations to Rachel were immune from the possibility of bankruptcy discharge; or (3) Attorney Ames chose to ignore the legal import of Kenneth's bankruptcy discharge. As to the first possibility, a five-minute review of the adversary proceeding file would have set her right.[13] The second is a conclusion that could only be born of fantasy, coupled with indifference to the Bankruptcy Code's content.[14] As to the third, I have no evidence before me that Attorney Ames's actions were *calculatedly,* as opposed to ignorantly, unlawful.

The upshot is that, acting on counsel's advice, Rachel has landed in hot water. Prosecuting her amended contempt motion was an unqualified, inexcusable violation of § 524's discharge injunction. Kenneth is entitled to relief, and under First Circuit law that relief may include damages, punitive damages, and attorney's fees. Kenneth, however, seeks only the counsel fees he incurred in securing the peace to which his discharge and the adversary proceeding judgment entitled him. His counsel's unchallenged (and objectively reasonable) affidavit and itemization of fees establishes those fees and costs as $564.53.[15]

### *Conclusion*

Accordingly, pursuant to § 524 and § 105(a), Rachel Ray will be ordered to pay to Kenneth Ray the total sum of $564.53. Because I conclude that Rachel's violation of the discharge injunction was occasioned exclusively on account of erroneous advice provided by Attorney Ames, I will further order that Attorney Ames indemnify Rachel Ray and hold her harmless from this obligation or, alternatively, pay the sum of $564.53 to Kenneth Ray directly.[16]

A separate order will enter forthwith.

---

**12.** See text at n. 7, *supra.* The amended contempt motion expressly acknowledges the adversary proceeding's result.

**13.** Given the fact that Attorney Ames set out to enforce an obligation she knew had been brought before this court on her client's complaint, failure to review the file would be inexplicable.

**14.** The pertinent Code sections have been summarized above. Moreover, § 523(a)(5) and § 523(a)(15) each expressly treat obligations crated by "a separation agreement, divorce decree, or other order of a court of record...."

**15.** Happily for Rachel and Attorney Ames, Kenneth's attorney acted promptly to nip their actions in the bud, before more substantial damages claims could accrue.

**16.** This opinion, although breaking no new ground, will be published in an effort to set right misconceptions Attorney Ames repre-

sented to be widely-held within the family law bar.