**In re the Matter of Terry Lee FLUKE, Debtor.**

No. 00–01364 PJW.

United States Bankruptcy Court, D. Delaware.

Feb. 10, 2004.

Elwood T. Eveland, Jr., Wilmington, DE, for Terry Lee Fluke.

Henry A. Heiman, Heiman, Gouge & Kaufman, LLP, Wilmington, DE, for Charles K. Fluke, Jr.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to Debtor's motion to reopen (Doc. 14).[1] Debtor has requested that the Court: (1) reopen her Chapter 7 case; (2) find her ex-husband in contempt of both the Court's June 16, 2000 order discharging Debtor and the 11 U.S.C. § 524 discharge injunction;[2] and (3) sanction the ex-husband or his attorney for their conduct in obtaining a modification, in the Court of Common Pleas for Adams County, Pennsylvania, of a divorce property settlement. For the reasons set forth below, I find that the ex-husband's post-discharge conduct in obtaining a modification of the divorce property settlement agreement violated the discharge injunction.

## BACKGROUND

Terry L. Fluke and Charles K. Fluke, Jr. were divorced on February 17, 2000. The decree, entered in the Court of Common Pleas for Adams County, Pennsylvania (the "Divorce Court"), incorporated a Marriage Settlement Agreement ("MSA"). The MSA sought to equitably distribute the marital estate, including accumulated joint debt and Mr. Fluke's United States Coast Guard retirement benefits ("Retirement Benefits"). Pursuant to the MSA, Mr. Fluke agreed to assume sole responsi-

---

1. Citations to the docket in the main bankruptcy case, *In re Fluke,* Case No. 00–1364, will be to "Doc. ___." Citations to the docket in the adversary proceeding, *Fluke v. Fluke,* A–00–656, will be to "Adv. Doc. ___."

2. Hereinafter, unless otherwise indicated, all references to "§ ___" are to a section of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

bility for certain debts and Debtor assumed responsibility for $9,415.15 in credit card and installment debt. Also, the MSA provides that Debtor is to receive thirty percent (30%) of the Retirement Benefits, if and when received by Mr. Fluke.

Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 8, 2000. On June 9, 2000, Mr. Fluke instituted an adversary proceeding challenging the dischargeability of the Debt. The Court conducted an evidentiary hearing on March 13, 2001, to determine whether that obligation was dischargeable under § 523(a)(15).[3] By an April 19, 2001 Judgment Order, the Court determined that Debtor satisfied both subparts of § 523(a)(15) so that the $9,415.15 debt was discharged. *See* Adv. Doc. 13. The debt thus remained the obligation of Mr. Fluke.

On November 26, 2001, Mr. Fluke, through his divorce attorney, filed a Petition for Special Relief in the Divorce Court. The petition alleged that because of Debtor's "bad faith in discharging her assumed debts to bankruptcy" she should be disqualified from receiving the 30% of the Retirement Benefits. *See* Doc. 15, Ex. A, ¶ 10. The Divorce Court held a hearing on December 31, 2001 and issued an opinion and order on March 15, 2002 (the "March 15th Order"). The Divorce Court did not grant the relief requested by Mr. Fluke and did not address the allegation of bad faith. Instead, the Divorce Court found as follows:

> In order to give plaintiff the benefits that were bargained for, the Court will direct that the defendant be responsible for the following: (a) Discover card: $2,830.00 and (b) MBNA (mitigated): $6,585.15 for a total of $9,415.15.

*See* Doc. 15, Ex. C.

The Divorce Court directed Debtor to pay the $9,415.15 to Mr. Fluke in thirty-six monthly installments of $261.53, starting May 1, 2002. *See* Doc. 15, Ex. C.

Debtor failed to pay the required May and June 2002 monthly payments. As a result, Mr. Fluke returned to the Divorce Court and filed a Petition for Sanctions. Thereafter, Debtor petitioned this Court to reopen her bankruptcy case. Debtor alleges that both Mr. Fluke's initial Petition for Special Relief and his follow-up Petition for Sanctions violated the discharge injunction of § 524(a)(2). *See* Doc. 14 at ¶ 6. In response, Mr. Fluke argues that no violations occurred because: (1) the Divorce Court properly determined that Pennsylvania case law permitted modification of the MSA; and (2) the Divorce Court granted a form of relief that was not requested. *See* Doc. 19 at 3–4. I find Mr. Fluke's arguments to be unpersuasive and conclude that the conduct in seeking and

---

**3.** Section 523(a)(15) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (2003).

obtaining the modification of the MSA was improper.

## DISCUSSION

■ Resolution of the issues presented in Debtor's motion to reopen rests on determining whether Mr. Fluke may petition the Divorce Court for a modification of the MSA due to Debtor's discharge in bankruptcy. The focus is not on what type of relief Mr. Fluke sought from the Divorce Court (here, the elimination of Debtor's allocation of the Retirement Benefits), but whether he is entitled to seek any relief in the Divorce Court. After a hearing on August 8, 2002, the Court ruled from the bench that it would reopen Debtor's bankruptcy case and would take the other issues presented in Debtor's motion under advisement after further written submissions from the parties. The issue addressed here is whether Mr. Fluke's and/or his divorce attorney's conduct in obtaining a modification of the MSA violated § 524(a)(2)'s discharge injunction.[4]

■ Section 524(a)(2) is a broad injunction which bars pursuit of any relief in another forum for a claim that has been discharged by the bankruptcy court. The injunction ensures that a debtor will receive the benefit of the Bankruptcy Code's "fresh start".

Mr. Fluke argues that two Pennsylvania cases, *Romeo v. Romeo*, 417 Pa.Super. 180, 611 A.2d 1325 (1992) and *Lowenschuss v. Lowenschuss*, 453 Pa.Super. 340, 683 A.2d 1214 (1996), justify the Divorce Court's exercise of jurisdiction to entertain Mr. Fluke's motion and allowed it to modify the MSA post-discharge. *See* Doc. 19, p. 2. The March 15th Order also relied on those two cases. However, I find that significant factual differences exist between the matter before me and the two cited cases.

In *Romeo*, the Pennsylvania Superior Court held that courts retain continuing jurisdiction to modify divorce distribution orders because of the powers granted to the court under Pennsylvania statute 23 Pa. Cons.Stat. Ann. § 3104(a)(1) (2003), even though the Pennsylvania divorce code does not have a specific provision addressing the modification of a final decree of property distribution. *Id.* at 1327–28. In *Romeo*, Ms. Romeo sought modification of the divorce decree due to the increased health care costs of her children and Mr. Romeo's unwillingness to list the marital home at a reasonable price. *Id.* at 1327. Ms. Romeo asked the court to order Mr. Romeo to share in the costs of the health care, mortgage and insurance and to execute a reasonable listing agreement for the marital home. *Id.* The court granted the petition, but ordered different relief. *Id.* at 1328. Specifically, Mr. Romeo was given title to another property jointly owned by the couple in return for paying all of the children's health care bills. *Id.* at 1327–28.

Here, Mr. Fluke argues that *Romeo* entitles him to seek modification of the MSA since the Divorce Court has the jurisdiction to order relief different from that sought. The Court does not deny that a state court may grant such relief, but the present matter is not limited to that proposition. The *Romeo* court did not consider, and was not even asked to address, what effect a bankruptcy discharge would have

---

4.  Section 524(a)(2) provides:
    (a) A discharge in a case under this title—
        (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. 11 U.S.C. § 524(a)(2).

on a state court's power to subsequently modify a property settlement agreement.

Mr. Fluke also relies on *Lowenschuss* for the same proposition as *Romeo*—that the Divorce Court has the ability to modify a previously issued property settlement. In *Lowenschuss,* the Pennsylvania Court of Common Pleas' divorce decree entitled Ms. Lowenschuss to a percentage of Mr. Lowenschuss' pension benefits. 683 A.2d at 1215. Following that decision, Mr. Lowenschuss filed for reorganization in the United States Bankruptcy Court for the District of Nevada. *Id.* Mr. Lowenschuss, in arguments that were directly opposite to his divorce testimony, claimed that his pension plan was governed by ERISA, and, as a result, Ms. Lowenschuss would no longer be entitled to her percentage of these assets after the reorganization. *Id.* at 1215. After various proceedings in the bankruptcy court and the United States District Court for the District of Nevada, Ms. Lowenschuss was granted permission by the bankruptcy court to petition the original Pennsylvania Common Pleas judge for a modification of the property settlement. *Id.* Ms. Lowenschuss, in order to retain an interest in the retirement plan post-bankruptcy, sought to have the property settlement restated as a Qualified Domestic Relations Order ("QDRO"). *Id.* The Common Pleas judge denied the request, finding that the court did not retain jurisdiction to modify the property settlement following the divorce. *Id.* The Superior Court disagreed and held that the trial court could modify a divorce decree in order to effectuate the intention of the court. *Id.* at 1216.

While *Lowenschuss* took place within a bankruptcy context, there is a fundamental difference from the matter *sub judice,* namely, Ms. Lowenschuss sought, and received, permission from the bankruptcy court prior to seeking the QDRO in Penn-sylvania. Mr. Fluke did not even attempt to seek leave from this Court before filing his Petition for Special Relief. The *Lowenschuss* court did not need to look to bankruptcy law to determine the appropriateness of a post-discharge modification because Ms. Lowenschuss obtained permission from the bankruptcy court to pursue the state court remedy. In addition, I also note that Mr. Lowenschuss was apparently presenting a different argument in the bankruptcy proceeding then he had previously argued in the divorce proceeding. In the divorce proceeding, he argued that the pension benefits were not subject to ERISA because no one else participated in the plan. *See id.* at 1215. Mr. Lowenschuss adopted a contrary argument in the bankruptcy proceedings, arguing that his sons participated in the plan. *Id.* Unlike Ms. Lowenschuss' arguments, Mr. Fluke has not provided this Court with a colorable claim that Debtor received her discharge through inconsistent positions or other misconduct and no such issue was addressed by the Divorce Court.

Mr. Fluke could have, but did not, raise any issue of misconduct or bad faith in Debtor's Chapter 7 case. His only objection to the discharge of the debt was that based on the two tests set forth in § 523(a)(15). I note that Debtor filed for Chapter 7 protection shortly after the divorce decree was entered. However, that fact, if it could have made a difference, was not raised by Mr. Fluke in this Court either in the chapter case or the adversary proceeding.

There is a fairly extensive body of law on the issue I address here. I start with the following:

> It is clear that once a property settlement obligation is discharged in bankruptcy, it cannot be reimposed by the state court, nor may a new property division be imposed. Quite arguably,

basing a new obligation for support on the fact that a property settlement has been discharged is also nothing more than an "end run" around the bankruptcy discharge, an attempt to collect the discharged obligation, or part of it, in another form.

1 *Collier Family Law and the Bankruptcy Code* ¶ 6.10 (2003) (footnotes omitted).

Under certain circumstances a post-discharge modification to a divorce settlement may be appropriate. The decisions in *Siragusa v. Siragusa (In re Siragusa)*, 27 F.3d 406 (9th Cir.1994), and *Smith v. Smith (In re Smith)*, 218 B.R. 254 (Bankr. S.D.Ga.1997) show how that is so, but neither of these decisions are helpful to Mr. Fluke here. The Ninth Circuit Court of Appeals in *Siragusa* upheld a post-bankruptcy modification to a property settlement and found that it was not a § 524 violation. 27 F.3d at 408. A husband and wife were divorced and the decree required the husband to pay alimony of $3,000 per month for 60 months and the property settlement required him to purchase her share of the medical practice for $1.25 million (through monthly installments). *Id.* at 407. The husband then defaulted on the alimony payments and a judgment was entered against him in favor of the wife, but before it was executed, he filed bankruptcy to discharge the amount owed under the property settlement. *Id.* The bankruptcy court found that he would have to pay the alimony judgment since it was not dischargeable, but the property settlement obligation was discharged. *Id.* He paid the alimony judgment but she filed a motion in divorce court to have the property settlement modified, "citing the discharge of the property settlement in bankruptcy as a 'changed circumstance.'" *Id.* The alimony modification was granted and the husband was required to pay $7,500 per month until the wife remarried or the death of either party. *Id.* The

husband filed a complaint in bankruptcy court alleging that the modification violated the standing injunction of § 524. *Id.* The court of appeals found that a bankruptcy discharge could constitute a changed circumstance. In sharp contrast to the matter before me, the *Siragusa* court observed:

> Nothing in the record suggests that the divorce court was attempting to reinstate the property settlement debt; the amount awarded in alimony is not a substitute for the amount of the discharged property settlement. The alimony modification merely takes into account the fact that [the wife] would no longer receive the property settlement payments upon which the original alimony was premised.

*Id.* at 408.

In *Smith*, the debtor filed for chapter 13 relief in the bankruptcy court following his divorce proceedings in the Georgia state courts. 218 B.R. at 256. The debtor and his wife entered into a spousal maintenance agreement and a property settlement to divide the marital estate. *Id.* After filing an adversary proceeding, the wife filed a petition in the state court seeking a determination as to who was required to make mortgage payments on the marital home. *Id.* Both parties had agreed to lift the automatic stay and the bankruptcy court ordered the stay lifted to determine liability. *Id.* The state court determined that the debtor was liable to his wife. *Id.* at 256–57. The debtor sought relief in the bankruptcy court and argued that the state court decision finding him liable was dischargeable under §§ 523(a)(5) and (a)(15). *See id.* at 258. The bankruptcy court determined that the state court intended the mortgage payments to "provide additional support to the wife". *Id.* at 260–61. The bankruptcy

court permitted the modification of the divorce decree, specifically the maintenance and support payments, because they are not dischargeable in bankruptcy. *Id.*

Neither *Siragusa* nor *Smith* help Mr. Fluke's cause here. In *Siragusa* and *Smith*, the courts focused on the post-discharge modification of settlements that contained alimony or other spousal maintenance payments. Such payment obligations in separation agreements, unlike true property distributions, are, by reason of § 523(a)(5), not dischargeable.[5] Here, we are dealing only with the distribution of marital property; there was no agreement for alimony or other spousal maintenance contained in the Fluke's divorce papers.[6] The *Siragusa* and *Smith* courts were not limited to property settlements, they considered whether non-dischargeable alimony could be modified post-discharge. Equally important is the fact that here Mr. Fluke did not petition the Divorce Court on the basis of changed circumstances, but on Debtor's alleged bad faith bankruptcy. The Divorce Court did not address changed circumstances or bad faith. It premised its ruling on giving Mr. Fluke the benefit of the bargain in the MSA. It did so by imposing a $9,415.15 obligation

on Debtor presumably because this Court's discharge of Debtor relieved her of a $9,415.15 obligation. I do not believe that that ruling can be viewed as anything other than a reinstatement of the debt that was discharged. As discussed in further detail below, had the Divorce Court granted Mr. Fluke the relief he requested, I believe the effect would still be tantamount to a reinstatement of the Debt.

I find a number of other bankruptcy court decisions that support the position I take here.

*Brabham v. Brabham (In re Brabham),* 184 B.R. 476 (Bankr.D.S.C.1995), involved a fact pattern similar to the instant matter. Mr. and Ms. Brabham were divorced according to a decree issued by the family court. The divorce decree incorporated an equitable property distribution agreement and a custody, support and visitation agreement. *Id.* at 477–78. The property distribution agreement called for the equal division of accumulated credit card debt, one automobile to each party and the apportionment of Mr. Brabham's military pension and retirement benefits. *Id.* Shortly after the divorce, Ms. Brabham filed for chapter 7 relief in the bankruptcy court and a discharge was granted. *Id.* at

---

**5.** In relevant part, § 523(a)(5) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
  &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....
11 U.S.C. § 523(a)(5).

**6.** Neither party provided this Court with a full copy of the MSA. The Court's conclusion regarding the lack of an alimony provision in

the Fluke's divorce decree is based on the text cited by the parties in their briefs and on two other pieces of circumstantial evidence. First, the Court looked to Debtor's financial disclosure statements filed at the time of bankruptcy. In Schedule I, the Debtor listed "$0.00" on the line marked "Alimony, maintenance or support payments payable to the debtor for the debtor's use of that of dependents listed above." Doc. 1, Schedule I. Second, Mr. Fluke has not provided any information during the adversary proceeding or the current motions that would lead this Court to doubt Debtor's statements in her initial financial filings. The Court has concluded, therefore, that the Fluke's MSA did not call for alimony or other maintenance payments.

479–80. Although Mr. Brabham had the opportunity to challenge the discharge, he did not make an appearance in the case. *Id.* at 478. Instead of seeking relief in the bankruptcy court, Mr. Brabham filed a motion in the family court seeking modification of the divorce decree and the incorporated agreements. *Id.* at 479. Mr. Brabham sought two modifications: (1) that he be indemnified by Ms. Brabham for the credit card payments he was now obligated to pay; and (2) that the court eliminate Ms. Brabham's entitlement to his military retirement benefits. *See id.* Ms. Brabham filed a motion in the bankruptcy court to reopen her case and an adversary complaint against Mr. Brabham alleging violations of the discharge injunction. *Id.* The bankruptcy court determined that Ms. Brabham's obligations under the divorce decree had been discharged previously and that his attempt to have the family court modify the divorce decree post-discharge was nothing more than an attempt to circumvent the Bankruptcy Code. *Id.* at 487. The court thus ruled:

> The actions to vary a property division solely due to, and because of, the discharge of joint debts, or related hold harmless obligations, taken by the Defendant/Husband in this case, constitute a violation of federal bankruptcy law and therefore must be addressed by this Court. In contravention to the argument expressed by the Defendant's attorneys, this Court views the Defendant's efforts as de facto collection actions, regardless of whether the Defendant is formally seeking a "dollar for dollar" exchange.

*Id.* at 488.

The facts of *In re Ray*, 262 B.R. 580 (Bankr.D.Me.2001), are also similar to the present case. In their divorce decree Mr. and Mrs. Ray were bound by a property settlement agreement that provided for the husband's assumption of various credit card debts. *Id.* at 581. Mr. Ray filed for chapter 7 bankruptcy relief nearly three years after the divorce had been finalized. Ms. Ray was listed as a creditor and she filed an adversary complaint against Mr. Ray to determine the dischargeability of his credit card debt. *Id.* Shortly after the filing of Ms. Ray's complaint, and before the court had held a hearing in the adversary proceeding, Mr. Ray was given his discharge. *Id.* Immediately after the discharge was granted, Ms. Ray filed a motion with the Maine state court without pursuing her action in bankruptcy court. *Id.* Ms. Ray turned to the state court system seeking a determination that Mr. Ray was in contempt of court for willfully disobeying the divorce decree. *Id.* The motion was not prosecuted immediately by the state court. Ms. Ray continued prosecuting the adversary proceeding and amended her state court motion after the bankruptcy court discharged Mr. Ray's divorce decree obligations. *Id.* at 582. Shortly after this determination, the state court addressed Ms. Ray's amended motion and issued a subpoena for Mr. Ray seeking testimony that would help the court determine whether Mr. Ray was in contempt. *Id.* at 583. Mr. Ray initiated proceedings in the bankruptcy court seeking relief from the state court's subpoena. *Id.* The bankruptcy court found that Ms. Ray's attempt to hold Mr. Ray in contempt of the divorce decree obligations in state court violated the discharge injunction of § 524. *Id.* at 585. The bankruptcy court imposed sanction on Ms. Ray's divorce lawyer. *Id.*

Similarly, in *In re Tostige*, 283 B.R. 462 (Bankr.E.D.Mich.2002), the attempted modification of the property settlement was held to violate § 524. Mr. Tostige and Ms. Burns were divorced by consent judgment on May 28, 1999. *Id.* at 462. Neither party was to receive alimony and

Mr. Tostige was to receive, among other articles, a power boat that was to be refinanced in his name. *Id.* Mr. Tostige was also required to pay the attorneys' fees and an additional $1,750 to Ms. Burns as compensation for an uneven property distribution. *Id.* at 463. A year and a half later, Mr. Tostige filed a voluntary chapter 7 bankruptcy petition. *Id.* He listed Ms. Burns as a creditor for the $1,750 in unpaid debt arising from the divorce. He also listed the original power boat debt. *Id.* Both Ms. Burns and he were jointly liable on the debt because he had not followed through with the divorce decree's provisions requiring him to refinance the boat in his name. *Id.* Mr. Tostige was granted a discharge on October 30, 2001 and Ms. Burns filed a motion in the state court system requesting that the current property distribution be set aside in favor of a property distribution that took into account her new obligation to make the boat payments. *Id.* Mr. Tostige, in turn, sought relief from Ms. Burns' state court motion in the bankruptcy court. *Id.* The bankruptcy court noted that although Ms. Burns "remains liable as a co-debtor [this] does not entitle her to seek reimbursement from [Mr.] Tostige for payments she has made post-petition." *Id.* The bankruptcy court concluded that Ms. Burns' attempt to modify the property settlement post-discharge violated § 524's discharge injunction. *Id.* at 463–64.

The bankruptcy court in *In re Ladak,* 205 B.R. 709 (Bankr.D.Vt.1997) also addressed a post-petition attempt to modify a property settlement agreement and whether this attempt violated § 362's automatic stay provision. Ms. Ladak sought sanctions against her ex-husband for his attempt to modify their divorce decree during the pendency of her chapter 7 bankruptcy case. *Id.* at 709–10. Mr. Ladak petitioned the state courts to overturn the property settlement incorporated in

the divorce decree because Ms. Ladak's bankruptcy made the distribution inequitable. The bankruptcy court determined that the hold-harmless agreements were actually property settlements; they were not meant to be support payments. *Id.* at 710. Therefore, the bankruptcy judge concluded that Mr. Ladak's attempt to modify the divorce decree was nothing more than an attempt to modify debtor-creditor rights. *Id.* at 712. Such an attempt, without the permission of the bankruptcy court, violated the automatic stay. *Id.*

The salient facts in the matter before me show why the decisions in *Ray, Tostige* and *Brabham* suggest the proper result here. Debtor filed a voluntary petition for relief after her divorce was finalized and a § 727 discharge was granted by this Court. Mr. Fluke instituted an adversary proceeding seeking to have Debtor's debt obligation under the MSA declared nondischargeable. He chose to make that challenge solely on the basis of § 523(a)(15). He did not allege bad faith or any other misconduct by Debtor. Following an evidentiary hearing, the Court determined that the debt was dischargeable. Debtor's obligations to the banks and to Mr. Fluke were discharged. Unsatisfied with the holding in the adversary proceeding, Mr. Fluke sought to modify the MSA in the Divorce Court. As with *Brabham,* Mr. Fluke attempted to eliminate Debtor's property rights to his retirement plan. Similar to the procedures followed in *Brabham, Ray* and *Tostige,* Mr. Fluke attempted to modify a discharged property settlement without seeking leave to do so from the bankruptcy court. The Fluke's divorce decree and MSA did not provide for alimony, support or maintenance payments. Thus, he was not seeking a modification of such on-going obligations to address changed circumstances.

From the above discussion it seems clear, and I so find, that Mr. Fluke's post-discharge conduct was in violation of § 524(a)(2).

■■■ Debtor seeks civil contempt sanctions against Mr. Fluke because his prosecution of the petitions in the Divorce Court violate the § 727 discharge and the § 524(a)(2) discharge injunction. Civil contempt sanctions may be granted when three elements have been established: "(1) a valid order of the court must exist; (2) the person to be charged with contempt must have actual knowledge of the order; and (3) the person must have disobeyed the order." *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 330 (Bankr.D.Del.1999). A bankruptcy court has the power to issue a wide range of sanctions, including costs, attorneys' fees and compensatory and punitive damages. *See In re Ray*, 262 B.R. 580, 585.

Given my finding that Mr. Fluke willfully attempted to "end run" around the discharge, an award of sanctions in the form of counsel fees and expenses appears appropriate here. But Mr. Fluke did not pursue the Divorce Court remedy on his own. I assume that it was done on the advice of Mr. Fluke's divorce attorney and, if so, the sanctions would appropriately be charged against that attorney. *See In re Ray*, 262 B.R. at 585. However, this matter is complicated by the fact that Mr. Fluke's divorce attorney is not a member of the Bar of the state where this Court presides and there is therefore some question in my mind as to whether this Court has jurisdiction to impose sanctions on him. An alternative would be to impose the sanctions on Mr. Fluke and leave it to him to pursue some type of indemnification from his divorce attorney. This alternative also strikes me as problematic. Equally important, since Mr. Fluke's divorce attorney has not appeared in this Court, I am not at this time in a position to assess his culpability in the matter. In any event, I will leave it open to Debtor's counsel to decide whether, and how, further relief in the form of sanctions may be appropriate in this matter.

In deciding the terms of the order to be entered in this matter, I am assuming that, following Debtor's filing of the motion to reopen in this Court, Mr. Fluke has not taken any action to cause Debtor to comply with the March 15th Order and that Debtor has not made any payments to Mr. Fluke pursuant to that order.

## CONCLUSION

Because I find that Mr. Fluke intentionally, through his divorce attorney, took action to nullify the effect of the discharge order entered in this case in favor of Debtor and that such conduct constitutes a violation of the injunction provision of § 524(a)(2), an appropriate order will be entered enjoining Mr. Fluke from seeking enforcement of the March 15th Order or otherwise exercising any collection or reimbursement efforts against Debtor with respect to the discharged obligation.

In conclusion, I hasten to add the observation made by the bankruptcy court in *In re Ladak*:

We caution against reading our holding as a case where the discharge of debts in bankruptcy may prohibit a state court from modifying a divorce decree concerning spousal maintenance or child support because of a material change in circumstances. There is no ongoing maintenance obligation flowing from Debtor to Respondent to modify here.

205 B.R. at 712.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, Charles

K. Fluke, Jr. is hereby enjoined from taking any action, directly or indirectly, to challenge, nullify, circumvent, set-off, reimburse or otherwise modify the effect of the discharge granted to Terry Lee Fluke in this Chapter 7 case, including the discharge of the debt which is the subject of this Court's Judgment Order in the adversary proceeding in this Court captioned Charles Fluke, Jr. v. Terry Lee Fluke, Adv. Proc. No. 00–656. This injunction includes, but is not limited to, any attempt by Charles K. Fluke, Jr. to enforce the Order of the Court of Common Pleas of Adams County, Pennsylvania, Civil Action—Law, dated March 15, 2002 in the matter of Charles K. Fluke, Jr. vs. Terry L. Fluke, No. 99–S–816.