SHAN COLLETT, APPELLANT, V.
KIMBERLY A. COLLETT, APPELLEE.
707 N.W.2d 769

Filed December 9, 2005.    No. S-04-850.

John F. Simmons and Jeffrey L. Hansen, of Simmons Olsen Law Firm, P.C., for appellant.

A. James Moravek, of Curtiss, Moravek, Curtiss, Margheim & Miller, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Shan Collett appeals from an order of the district court for Box Butte County which modified the alimony award included in a decree dissolving his marriage to Kimberly A. Collett. The modification increased the alimony which Shan was required to pay Kimberly from $1 per year to $950 per month for 123 months and required Shan to maintain insurance on his life, with Kimberly as

the named beneficiary, until the alimony is paid in full. We affirm the judgment of the district court.

## FACTS

Both parties are veterinarians. During their marriage, First National Bank made a loan to Shan to enable him to open a veterinary practice in Alliance, Nebraska. Although the loan documents are not included in the record, it is apparent from the testimony that the loan was secured by a building, various equipment, and inventory purchased by Shan for the practice. Kimberly did not sign the promissory note, but she executed a written guaranty because the bank would not otherwise make the loan to Shan.

The clinic experienced financial difficulties soon after opening in September 2000. Shan defaulted on payments to the bank, and in November 2001, he filed a bankruptcy proceeding under chapter 7 of the U.S. Bankruptcy Code. Kimberly received notice of the bankruptcy prior to trial in the dissolution action and advised her lawyer of the filing, but she did not file an adversary proceeding or petition for her own discharge in bankruptcy.

Trial in the dissolution proceeding initiated by Shan was held on December 6, 2001. Shan testified that the value of the clinic property was approximately equal to the outstanding balance due on the loan. Shan also offered evidence that he intended to move to California, where he had secured employment as a veterinarian at a gross annual salary of $67,500, plus benefits and bonuses as deemed appropriate by his employer. At the time of trial, Kimberly was employed in Alliance, with an annual income of $52,000.

The decree of dissolution was filed on March 8, 2002, and provided in relevant part:

> 20. Commencing January 1, 2002, and on the first day of each year thereafter, [Shan] shall pay to [Kimberly] the sum of $1 alimony.
>
> a. This alimony payment shall terminate only upon the death of [Kimberly]; or
>
> b. On the first day of the month after which [Kimberly] has no further liability for debts discharged by [Shan]; or
>
> c. On the first day of the month after which [Kimberly] has no further liability for student loans to be paid by [Shan].

If [Kimberly] must pay any money on [Shan's] debts discharged in bankruptcy or if [Kimberly] must pay any more than 50% of the consolidated student loan, either result is a material change in circumstances requiring that the $1 per year alimony be increased to a monthly amount that will, after requiring [Shan] to pay [Kimberly's] increased income tax liability due to the alimony award, pay all of [Kimberly's] payments to discharge these two obligations in full.

. . . .

24. [Shan] is ordered to pay all debts incurred during the marriage as it appears that everything owed was connected to his self-employment and the opening of his new vet clinic. Since he has filed bankruptcy, all of these bills will be discharged anyway.

First National Bank eventually foreclosed and took possession of the real and personal property of the clinic which was owned by Shan and apparently pledged as security on the loan. The bank sold the real estate, and Kimberly assisted the bank in disposing of the remaining equipment and inventory. By this time, Shan had moved to California and did not assist in the liquidation. After the sale of all property, equipment, and inventory, there was a deficiency for which the bank sued Kimberly as guarantor. Summary judgment was entered in favor of the bank on November 25, 2003, in the amount of $68,696, which included the deficiency and accumulated interest.

On December 4, 2003, Kimberly filed a motion to modify alimony. In her operative amended motion filed on February 25, 2004, Kimberly cited the language of the decree pertaining to alimony and alleged that by virtue of the deficiency judgment against her, there was a material change in circumstances requiring an increase in the alimony award until the deficiency judgment was paid in full. Shan filed an answer generally denying her allegations and further alleging that the original alimony award was void as a conditional order. Shan also alleged that modification would "violate the 'fresh start' benefit of filing bankruptcy," that the debt which was the subject of the deficiency judgment had been discharged in his bankruptcy, that Kimberly "had the option of filing an adversary proceeding in

the bankruptcy case to declare the marital debts non-discharged and failed to do so," and that the bankruptcy was contemplated at the time of the decree of dissolution and therefore did not constitute a material change in circumstances.

At a hearing on her motion, Kimberly introduced evidence that in order to satisfy the deficiency judgment, she would be required to pay $800 a month for 122 months, plus a final payment of $181.46. She also submitted evidence that an increase of $800 a month in her alimony would increase her tax liability by approximately $164.41 per month and that her income had decreased while her expenses had increased since entry of the decree.

The district court determined that the provisions in paragraph 20(b) and (c) of the original decree were void and unenforceable. The court also found there was a material change in circumstances because payment of the deficiency judgment would substantially reduce Kimberly's income and standard of living. The court determined that the change in circumstances was not contemplated by the parties at the time of the dissolution because they both believed the assets of Shan's veterinary practice in Alliance would be sufficient to cover his loan to the bank. Based upon these findings, the district court modified its original alimony award and ordered Shan to pay alimony in the amount of $950 per month effective July 1, 2004, for a period of 123 months, with the payments to terminate "only in the death of [Kimberly] or the completion of the above-required alimony payments." The court also ordered Shan to obtain term life insurance in the amount of $70,000 until the alimony was paid in full.

Shan commenced this timely appeal, which we removed to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Shan's sole assignment of error is that the district court erred in increasing the award of alimony.

## STANDARD OF REVIEW

An appellate court entrusts the modification of an alimony award to the discretion of the trial court and reviews the trial court's decision de novo on the record for abuse of

discretion. *Bowers v. Lens*, 264 Neb. 465, 648 N.W.2d 294 (2002); *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Bowers v. Scherbring*, 259 Neb. 595, 611 N.W.2d 592 (2000).

## ANALYSIS

Neither party has appealed from the determination of the district court that portions of the decree of dissolution were conditional and void, and we therefore disregard those provisions in our analysis. So viewed, the decree awarded Kimberly alimony in the amount of $1 per year. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in Neb. Rev. Stat. § 42-365 (Reissue 2004) make it appropriate. See *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004).

■ Because alimony, albeit nominal, was allowed in the original decree, the award is subject to modification for "good cause shown" pursuant to § 42-365. In this context, "good cause" means a material and substantive change in circumstances and depends upon the circumstances of each case. *Bowers v. Scherbring, supra; Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). A material change of circumstances constituting grounds for modification of a dissolution decree means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Gallner v. Hoffman*, 264 Neb. 995, 653 N.W.2d 838 (2002).

### WAS ALLEGED CHANGE IN CIRCUMSTANCES WITHIN CONTEMPLATION OF PARTIES AT TIME OF DISSOLUTION?

■ Changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony award. *Pope v. Pope, supra; Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992). Shan characterizes the change in circumstances upon which the

modification order was based as the "bankruptcy discharge of the First National Bank debt and the impact of that discharge on Kimberly." Brief for appellant at 12. Shan argues that these circumstances were within the contemplation of the parties at the time of the dissolution proceeding and thus cannot be considered a material change in circumstances justifying a modification of alimony. Shan's argument is based in part on the language of the decree which the district court subsequently declared was conditional and therefore void. Having successfully advanced the argument that these provisions were void, Shan cannot now claim that they lend substantive support to his position regarding the contemplation of the parties in this appeal.

At Shan's request, the district court struck language from the decree which could be viewed as prejudging the issue of whether there was a change in circumstances sufficient for purposes of future modification of the alimony award. Striking the language did not preclude the court from subsequently considering a request for modification based upon events which transpired subsequently to the decree. See *In re Marriage of Geil*, 509 N.W.2d 738 (Iowa 1993). As the moving party, Kimberly bore the burden of proving a material and substantial change in circumstances which would justify modification of the alimony award. See *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

The record clearly establishes that Kimberly had notice of the bankruptcy filing which occurred in November 2001, and the district court specifically referred to the filing and the discharge of Shan's debts in the decree. However, the material change in circumstances upon which the district court modified the alimony award was neither the filing of the bankruptcy nor the resulting discharge of Shan's indebtedness to the bank; rather, the material change was Kimberly's subsequent liability to the bank for the deficiency judgment. The record in this case does not include evidence received at the trial of the dissolution proceeding. However, at the modification hearing, Shan testified that at the time of his bankruptcy filing, he assumed that the property which secured the bank loan "was worth about what I owed on it." He acknowledged that this was also his testimony at the dissolution proceeding a few weeks after his filing. There is no indication that Kimberly had any different expectation.

Although it is clear that the parties contemplated Shan's bankruptcy and the discharge of his personal indebtedness to the bank, it is likewise apparent that the parties expected that the unpaid balance of the loan would be satisfied by the bank's foreclosure and sale of the collateral. Thus, the record supports the district court's finding that the 2003 deficiency judgment against Kimberly was not within the contemplation of the parties at the time of trial in 2001.

### Effect of Bankruptcy Upon Power of State Court to Modify Alimony Award Based Upon Change in Circumstances

■ Shan's principal argument is that modification of the alimony award violates the U.S. Bankruptcy Code and must therefore be set aside under the Supremacy Clause of the U.S. Constitution. Federal preemption arises from the Supremacy Clause of the U.S. Constitution and is the concept that state law that conflicts with federal law is invalid. *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003); *Eyl v. Ciba-Geigy Corp.*, 264 Neb. 582, 650 N.W.2d 744 (2002). Before state law governing domestic relations will be overridden as preempted by federal law, it must do major damage to clear and substantial federal interests. *Rose v. Rose*, 481 U.S. 619, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979).

Shan argues that the modification of his alimony obligation deprives him of the "fresh start" provided by a discharge of indebtedness under the U.S. Bankruptcy Code, a central purpose of which is "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991), quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S. Ct. 695, 78 L. Ed. 1230 (1934). In order to ensure that the debtor receives the benefit of a "fresh start," a discharge under Chapter 7 of the U.S. Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (2000). See *In re Fluke*, 305 B.R. 635 (D. Del. 2004).

Generally, a bankruptcy discharge does not discharge the debtor from any debt for a domestic support obligation. At the time of Shan's discharge, 11 U.S.C. § 523(a)(5) (2000) provided in relevant part that a discharge under that title did not discharge an individual debtor from any debt to a "former spouse . . . for alimony to, maintenance for, or support of such spouse . . . in connection with a separation agreement, divorce decree or other order" of a state court of record. Likewise, other types of debts incurred in the course of a marital dissolution proceeding were not dischargeable in bankruptcy unless:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). We understand Shan to argue that because Kimberly did not file an adversary proceeding objecting to the dischargeability of Shan's indebtedness to the bank under § 523(a)(15), she cannot now seek a modification of alimony on the basis of the deficiency judgment which is related to the debt.

Shan relies upon *In re Fluke, supra*, which is instructive but distinguishable. In that case, a dissolution decree incorporated a property settlement agreement by which the wife assumed sole responsibility for $9,415.15 in debt incurred jointly by the parties during the marriage, and the husband assumed sole responsibility for other marital debt. The wife subsequently declared bankruptcy. In an adversary proceeding filed by the husband, the bankruptcy court determined that the debt was dischargeable because the conditions specified in § 523(a)(15)(A) and (B) were met. As a result of the wife's discharge, the husband remained obligated to the creditors for the debt. He returned to the state court which had entered the decree of dissolution and sought modification of other provisions of the

property settlement based on the wife's " 'bad faith in discharging her assumed debts to bankruptcy.' " *In re Fluke*, 305 B.R. at 637. The state court ordered the wife to pay the husband the full amount of the discharged debt in 36 monthly installments in order to give the husband " 'the benefits that were bargained for.' " *Id.* In response, the wife sought relief from the bankruptcy court on grounds that by obtaining the state court order, the husband and his attorney violated the discharge injunction of § 524(a). In determining that there had been a violation of the injunction, the bankruptcy judge held that by seeking relief in state court following the wife's bankruptcy discharge, the husband "attempted to modify a discharged property settlement without seeking leave to do so from the bankruptcy court." *In re Fluke*, 305 B.R. at 643. The court further noted that because the dissolution decree did not provide for alimony, support, or maintenance payments, the husband "was not seeking a modification of such on-going obligations to address changed circumstances," but, rather, "willfully attempted to 'end run' around the discharge." *Id.* at 643-44.

This case is distinguishable from *In re Fluke*, 305 B.R. 635 (D. Del. 2004), in that the original decree did include an award of alimony and the postbankruptcy modification of that award was sought on the basis of a material change in circumstances. Other courts addressing this scenario have rejected arguments that modification of alimony is merely a "repackaging" of debts discharged in bankruptcy and thus prohibited by federal law, if the party seeking modification is able to demonstrate an actual change in financial circumstances subsequent to the dissolution and bankruptcy of the former spouse. See, *In re Siragusa*, 27 F.3d 406, 407 (9th Cir. 1994); *Smith v. Smith*, 741 So. 2d 420 (Ala. Civ. App. 1999); *In re Marriage of Trickey*, 589 N.W.2d 753 (Iowa App. 1998). The court in *In re Marriage of Trickey* articulated what we believe to be the correct analytical approach:

> If the modification is essentially a reinstatement of the property settlement under the guise of alimony, the modification violates section 524 and is not permitted. . . . Mere attempts to "end run" around a bankruptcy discharge are not allowed. . . . However, if the alimony modification merely takes into account the fact that one spouse would

no longer receive the property settlement payments upon which the original support award was premised and the discharge results in changed financial circumstances, then modification will not violate federal bankruptcy law.

(Citations omitted.) 589 N.W.2d at 757. In *In re Marriage of Trickey*, the court held that because the parties understood at the time of the decree that lump-sum property settlement payments discharged in bankruptcy were contingent upon the success of the former spouse's business, the bankruptcy could not serve as a basis for modification of alimony. However, the court held that the prolonged period of the alimony recipient's unemployment was unanticipated and did constitute a change in circumstances which warranted an upward modification of the original alimony award.

In *In re Siragusa, supra*, the court determined that a post-bankruptcy alimony modification did not violate the discharge injunction where there was no showing that the former wife was attempting to reinstate a discharged property settlement obligation. Instead, the modification was based on the changed circumstance that the former wife would not receive the future property settlement payments upon which the original alimony award was premised. The court noted that the former husband's bankruptcy constituted a changed circumstance in that it "altered both [the former wife's] need and [the former husband's] ability to pay." *In re Siragusa*, 27 F.3d at 408. The court therefore concluded that the resulting modification was justified in that it "merely takes into account the fact that [the former wife] would no longer receive the property settlement payments upon which the original alimony was premised." *Id.*

Noting that "not every modification of periodic alimony is considered a violation of the Bankruptcy Code," the court in *Smith v. Smith, supra*, determined that the former husband's bankruptcy discharge of his obligation to make future payments of alimony in gross resulted in a change in the former wife's financial circumstances sufficient to warrant an increase in periodic alimony and that such modification was not barred by federal law. 741 So. 2d at 422.

Although we have not previously addressed the precise issue presented here, this court has considered a postdissolution

bankruptcy discharge in determining whether an alimony award should be modified on the basis of a material change in circumstances. In *Anderson v. Anderson*, 206 Neb. 655, 294 N.W.2d 372 (1980), a dissolution decree included provisions ordering the husband to pay substantial marital debts and to make alimony payments of $200 a month for 10 years. After changing jobs, the husband filed an application to modify the alimony downward, citing his decreased earnings and the fact that the debts he was ordered to assume were "of such magnitude that it was impossible for him to continue making the alimony payments." *Id.* at 656, 294 N.W.2d at 373. After filing the application for modification, but before the hearing, the husband filed bankruptcy and obtained a discharge of some of his indebtedness. In affirming an order that determined that there had not been a change in circumstances sufficient to justify eliminating or reducing the alimony award, this court referred to the relief afforded the husband by virtue of his bankruptcy discharge, concluding that the husband's "change in income and expenses has approximately kept pace with each other." *Id.* at 658, 294 N.W.2d at 374.

In this case, there is evidence that the deficiency judgment resulted in a substantial and material change in Kimberly's financial circumstances. She testified that due to a job change, her annual income had dropped from $52,000 at the time of the decree to approximately $38,000 at the time of the modification hearing. She testified that she has only $200 to $300 remaining each month after payment of her bills. Kimberly testified that she has not made any payments on the deficiency judgment and has no property from which it could be satisfied. She presented evidence establishing that to satisfy the judgment over a 10-year period, it would require that she make debt service payments of $800 per month, and that if she received this amount in alimony, her income tax liability would increase.

Shan testified that his expenses had increased and that he could not afford to pay additional alimony. However, he also testified that his monthly income had increased from $1,400 at the time of the original decree to $4,000 at the time of the modification hearing, and that his housing costs, insurance, and some of his utilities are provided or paid for by his employer.

The record establishes that Kimberly's liability for the deficiency judgment has resulted in a material and substantial change in the relative economic circumstances of the parties which was not within the reasonable contemplation of the parties at the time of the decree of dissolution. Satisfaction of the deficiency judgment over a 10-year period in her current circumstances would alter Kimberly's monthly cashflow from slightly positive to decidedly negative. Because the modification of the alimony award was specifically attributed to this proven change in circumstances, it is not contrary to or preempted by federal bankruptcy law. See, *In re Siragusa*, 27 F.3d 406 (9th Cir. 1994); *Smith v. Smith*, 741 So. 2d 420 (Ala. Civ. App. 1999).

## CONCLUSION

For the reasons discussed herein, we conclude on the basis of our de novo review of the record that the district court did not abuse its discretion in modifying the original alimony award. Accordingly, we affirm.

AFFIRMED.